ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
        – and –
THEODORE J. PINTAR (131372)
DOUGLAS R. BRITTON (188769)
ASHLEY M. PRICE (281797)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com
dougb@rgrdlaw.com
aprice@rgrdlaw.com

Lead Counsel for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| VISWANATH V. SHANKAR, Individually and on Behalf of All Others Similarly Situated,  ) <br><br> Plaintiff, ) <br><br> vs. ) <br><br> IMPERVA, INC., et al., ) <br><br> Defendants. ) <br> _____ ) | Case No. 4:14-cv-01680-PJH <br><br> <u>CLASS ACTION</u> <br><br> NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF <br><br> DATE:  October 11, 2017 <br> TIME:  9:00 a.m. <br> CTRM:  3 |

1301726_2

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ...................................................................1

II.   SUMMARY OF THE LITIGATION .........................................................3

III.   THE SETTLEMENT ................................................................................5

IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ...............................7

    A.   The Standards for Judicial Approval of Class Action Settlements..........................7

    B.   Reference to Factors Considered by Courts in Granting Final Approval of Class Action Settlements Demonstrates that the Settlement Should Be Preliminarily Approved .........................................................9

        1.   The Settlement Is the Product of Arm's-Length Negotiations and Not the Product of Collusion ..................................9

        2.   The Extent of Discovery Completed and the Stage of the Proceedings ....................................................10

        3.   The Recommendations of Experienced Counsel ......................................11

        4.   The Risks of Proving Liability, Causation, and Damages ........................11

        5.   The Expense and Likely Duration of Further Litigation .........................12

V.   THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES......................................................14

    A.   Standard Applicable to Class Certification............................................14

    B.   The Settlement Meets the Requirements of Rule 23(a) ........................15

        1.   Rule 23(a)(1): Numerosity....................................................15

        2.   Rule 23(a)(2): Questions of Law or Fact Are Common ..........................15

        3.   Rule 23(a)(3): Lead Plaintiff's Claims Are Typical ................................16

        4.   Rule 23(a)(4): The Lead Plaintiff is Adequate .........................17

    C.   The Class Meets the Requirements of Rule 23(b)(3).............................18

        1.   Common Questions of Law or Fact Predominate......................................18

        2.   A Class Action Is a Superior Method of Adjudication .............................19

    D.   Lead Counsel Should Be Appointed Class Counsel Under Rule 23(g)................19

VI.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE....................................20

1

2                                                                                                    **Page**

3

VII.     THE PROPOSED NOTICE PROGRAM IS ADEQUATE AND CONSTITUTES
4          DUE AND SUFFICIENT NOTICE UNDER RULE 23, DUE PROCESS, AND
           THE PSLRA ...........................................................................................................21
5
VIII.    ATTORNEYS' FEES AND LEAD PLAINTIFF EXPENSES ........................................22
6
IX.      PROPOSED SCHEDULE OF EVENTS ..........................................................................23
7
X.       CONCLUSION ...............................................................................................................24
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Amchem Prods. v. Windsor*,
 521 U.S. 591 (1997)..............................................................................................18, 19

5

6

*Armstrong v. Davis*,
 275 F.3d 849 (9th Cir. 2001) ...................................................................................17

7

*Booth v. Strategic Realty Tr., Inc.*,
 No. 13-cv-04921-JST, 2015 WL 3957746
 (N.D. Cal. June 28, 2015) .......................................................................................7, 8

8

9

*Class Plaintiffs v. Seattle*,
 955 F.2d 1268 (9th Cir. 1992) ...............................................................................5, 20

10

11

*Desai v. Deutsche Bank Sec. Ltd.*,
 573 F.3d 931 (9th Cir. 2009) ...................................................................................19

12

13

*Destefano v. Zynga, Inc.*,
 No. 12-cv-04007-JSC, 2016 WL 537946
 (N.D. Cal. Feb. 11, 2016)........................................................................................11

14

15

*Dugan v. Ashley Furniture Indus., Inc.*,
 No. SA CV 16-1125 PA, 2017 WL 2709727
 (C.D. Cal. Jan. 9, 2017) ...........................................................................................2

16

17

*Ellis v. Naval Air Rework Facility*,
 87 F.R.D. 15 (N.D. Cal. 1980),
 *aff'd*, 661 F.2d 939 (9th Cir. 1981).........................................................................8, 9

18

19

*Glickenhaus & Co. v. Household Int'l, Inc.*,
 787 F.3d 408 (7th Cir. 2015) ...................................................................................13

20

21

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) .............................................................................9, 17, 18

22

23

*In re Adobe Sys., Inc. Sec. Litig.*,
 139 F.R.D. 150 (N.D. Cal. 1991).............................................................................14

24

*In re Apple Comput. Sec. Litig.*,
 No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608
 (N.D. Cal. Sept. 6, 1991) .........................................................................................13

25

26

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
 No. 12-cv-1737 JM (JLB), 2015 WL 224631
 (S.D. Cal. Jan. 15, 2015)....................................................................................16, 17, 19

27

28

1301726_2

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT - 4:14-cv-01680-PJH       - iii -

1

2                                                                              **Page**

3
*In re China Medicine Corp. Sec. Litig.*,
4     No. 8:11-1061-JST, 2013 WL 12126754
5     (C.D. Cal. May 16, 2013) ....................................................................................8

6     *In re Cooper Cos. Sec. Litig.*,
      254 F.R.D. 628 (C.D. Cal. 2009) ...........................................................14, 15, 18
7
      *In re Diamond Foods, Inc.*,
8     295 F.R.D. 240 (N.D. Cal. 2013) ..................................................................17, 18

9     *In re JDS Uniphase Corp. Sec. Litig.*,
      No. C-02-1486 CW (EDL), 2007 WL 4788556
10    (N.D. Cal. Nov. 27, 2007) ...............................................................................13

11    *In re Mego Fin. Corp. Sec. Litig.*,
12    213 F.3d 454 (9th Cir. 2000) ..................................................................9, 11, 12

13    *In re Omnivision Techs.*,
      559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...........................................................3, 8
14
      *in re Tableware Antitrust Litig.*,
15    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...............................................................7

16    *In re THQ, Inc. Sec. Litig.*,
      No. CV 00-1783AHM (EX), 2002 U.S. Dist. LEXIS 7753
17    (C.D. Cal. Mar. 22, 2002) ...............................................................................14

18
      *In re Tyco Int'l, Ltd.*,
19    535 F. Supp. 2d 249 (D.N.H. 2007)..................................................................12

20    *In re Veeco Instruments Sec. Litig.*,
      No. 05 MDL 0165 (CM), 2007 U.S. Dist. LEXIS 85629
21    (S.D.N.Y. Nov. 7, 2007) ..................................................................................12

22    *In re Verisign, Inc. Sec. Litig.*,
23    No. C 02-02270 JW, 2005 U.S. Dist. LEXIS 10438
      (N.D. Cal. Jan. 13, 2005) ................................................................................14
24
      *In re Warner Commc'ns Sec. Litig.*,
25    618 F. Supp. 735 (S.D.N.Y. 1985),
      *aff'd*, 798 F.2d 35 (2d Cir. 1986) ....................................................................12
26
      *In re Wireless Facilities, Inc. Sec. Litig. II*,
27    253 F.R.D. 607 (S.D. Cal. 2008) ..................................................................8, 12

28

Page

*In re Zynga Inc. Sec. Litig.*,
  No. 12-cv-04007-JSC, 2015 WL 6471171
  (N.D. Cal. Oct. 27, 2015) .................................................................................7, 10

*Kmiec v. Powerwave Techs., Inc.*,
  No. SA CV 12-0022-CJC, 2015 WL 12914343
  (C.D. Cal. Dec. 4, 2015) ..................................................................................9, 11

*Linney v. Cellular Alaska P'ship*,
  No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300
  (N.D. Cal. July 18, 1997),
  *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ....................................................................8

*McPhail v. First Command Fin. Planning, Inc.*,
  247 F.R.D. 598 (S.D. Cal. 2007) ...........................................................................19

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .....................................................................10, 11

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) .....................................................................7, 9, 12, 13

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014) ...........................................................................16, 17

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ...............................................................................22

*Richie v. Blue Shield of Cal.*,
  No. C-13-2693 EMC, 2014 WL 6982943
  (N.D. Cal. Dec. 9, 2014) .....................................................................................15

*Rodriquez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .................................................................................9

*Rosenburg v. IBM*,
  No. CV06-00430 PJH, 2007 WL 128232
  (N.D. Cal. Jan. 11, 2007) ...................................................................................20

*Smilovits v. First Solar, Inc.*,
  295 F.R.D. 423 (D. Ariz. 2013) ...........................................................................18

*Tadepalli v. Uber Techs., Inc.*,
  No. 15-cv-04348-MEJ, 2015 WL 9196054
  (N.D. Cal. Dec. 17, 2015) ..................................................................................2, 8

Page

*Torrisi v. Tucson Elec. Power Co.*,
     8 F.3d 1370 (9th Cir. 1993) ....................................................................................9, 24

*Util. Reform Project v. Bonneville Power Admin.*,
     869 F.2d 437 (9th Cir. 1989) ..............................................................................7

*Vizcaino v. Microsoft Corp.*
     290 F.3d 1043 (9th Cir. 2002) ............................................................................23

*Wal-Mart Stores, Inc. v. Dukes*,
     564 U.S. 338 (2011)..............................................................................................15

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
     §78j(b)..............................................................................................3, 6, 20
     §78t(a)..............................................................................................4
     §78u-4(a)(4) ......................................................................................23
     §78u-4(a)(7) ......................................................................................22

28 U.S.C.
     §1715..............................................................................................6

Federal Rules of Civil Procedure
     Rule 23 ....................................................................... *passim*
     Rule 23(a)........................................................................2, 15, 18, 19
     Rule 23(a)(1) ..............................................................................15
     Rule 23(a)(2) ..............................................................................15
     Rule 23(a)(3) ..............................................................................16
     Rule 23(a)(4) ..............................................................................17
     Rule 23(b) ........................................................................2, 19
     Rule 23(b)(3)..............................................................................18, 19
     Rule 23(b)(3)(A)-(D) ..............................................................19
     Rule 30(b)(6)..............................................................................4, 10
     Rule 23(c)(2) ........................................................................2, 22
     Rule 23(e)............................................................................. *passim*
     Rule 23(e)(1) ..............................................................................21
     Rule 23(g) ..............................................................................19, 20
     Rule 23(g)(1) ..............................................................................19

**SECONDARY AUTHORITIES**

5 James Wm. Moore,
     *Moore's Federal Practice* (3d ed. 2010)
     §23.165[3] ..............................................................................14

1

2                                                                                            **Page**

3

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons,
   *Securities Class Action Settlements – 2016 Review and Analysis*
   (Cornerstone Research 2017).....................................................................................2

*Manual for Complex Litigation* (4th ed. 2017)
   §13.14.......................................................................................................................2

William B. Rubenstein,
   *Newberg on Class Actions* (5th ed. 2015)
   §3:12 ......................................................................................................................15

William B. Rubenstein,
   *Newberg on Class Actions* (4th ed. 2016)
   §22:21 ....................................................................................................................16

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   TO: ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

2          PLEASE TAKE NOTICE that on October 11, 2017, at 9:00 a.m., or as soon thereafter as the

3   matter may be heard in the Courtroom of the Honorable Phyllis J. Hamilton, Chief District Judge, at

4   the United States District Court for the Northern District of California, Oakland Courthouse,

5   Courtroom 3 – 3rd Floor, 1301 Clay Street, Oakland, CA 94612, Lead Plaintiff Delaware County

6   Employees Retirement System ("Lead Plaintiff" or "Delaware") will respectfully move, pursuant to

7   Fed. R. Civ. P. 23(e) for entry of the [Proposed] Order Preliminarily Approving Settlement and

8   Providing for Notice ("Notice Order") submitted herewith, which (i) grants preliminary approval of

9   the proposed class action settlement on the terms set forth in the Stipulation of Settlement, dated as

10  of August 30, 2017 ("Stipulation" or "Settlement");[1] (ii) certifies the Class for settlement purposes;[2]

11  (iii) approves the form and manner of giving notice of the Settlement to the Class; and (iv) sets a

12  date for final approval of the Settlement.

13         Lead Plaintiff's motion is based on the Stipulation; the following Memorandum in support

14  thereof; the Declaration of Michael Joaquin Regarding Notice Plan ("Joaquin Decl."), filed herewith;

15  all of the prior pleadings and papers in this action; and such additional information or argument as

16  may be required by the Court.

17                    **MEMORANDUM OF POINTS AND AUTHORITIES**

18  **I.      PRELIMINARY STATEMENT**

19         Lead Plaintiff submits this Memorandum in support of its motion for preliminary approval of

20  the Settlement of this Litigation on the terms set forth in the Stipulation.  The Settlement provides for

21  the payment of $19,000,000 to resolve all claims of Lead Plaintiff and the Class against Defendants.

22  The Settlement is a good result for Class Members as it is 8.3% of the amount of recoverable damages

23

24  [1]   All capitalized terms not defined herein shall have the same meanings set forth in the Stipulation.

25  [2]   "Class" means, for purposes of the Settlement, all Persons and entities who purchased or
26  otherwise acquired Imperva, Inc. ("Imperva" or the "Company") securities between May 2, 2013
    and April 9, 2014, inclusive.  Excluded from this definition are (a) the Defendants and their
27  immediate families, (b) the directors and officers of Imperva at all relevant times, and (c) their legal
    representatives, heirs, successors, or assigns. Also excluded from the Class are those Persons who
28  timely and validly request exclusion from the Class pursuant to the terms of the Stipulation and its
    related Exhibits.

1  assessed by Lead Plaintiff, approximately $228 million, if Lead Plaintiff was to prevail on each of its

2  claims, which is well above the median percentage of 2.5% for securities class action settlements in

3  2016.  Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements –*

4  *2016 Review and Analysis*, at 7, Figure 6 (Cornerstone Research 2017).  The Settlement comes after

5  nearly three years of hard-fought litigation and after extensive arm's-length negotiations between the

6  parties with the substantial assistance of the Honorable Layn R. Phillips (Ret.).

7       "To approve a motion for preliminary approval of a class action settlement where the class

8  has not yet been certified, the Court must find that (1) certification of the class is appropriate under

9  Rule 23(a) and (b); (2) the settlement is fair under Rule 23(e); and (3) notice to the class is adequate

10  under Rule 23(c)(2)."  *Dugan v. Ashley Furniture Indus., Inc.*, No. SA CV 16-1125 PA (FFMx),

11  2017 WL 2709727, at *1 (C.D. Cal. Jan. 9, 2017).  In determining whether preliminary approval is

12  warranted under Rule 23(e), the issue before the Court is whether the Settlement is within the range

13  of what might be found fair, reasonable, and adequate, so that notice of the Settlement should be

14  given to Class Members, and a hearing scheduled to consider final settlement approval.

15  "Preliminary approval of a settlement is appropriate if 'the proposed settlement appears to be the

16  product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not

17  improperly grant preferential treatment to class representatives or segments of the class, and falls

18  within the range of possible approval.'"  *Tadepalli v. Uber Techs., Inc.*, No. 15-cv-04348-MEJ, 2015

19  WL 9196054, at *5 (N.D. Cal. Dec. 17, 2015) (citation omitted).  This Court is not required at this

20  point to make a final determination regarding the reasonableness of the Settlement.  *Id.* at *6 (after

21  preliminary approval of a settlement, a fairness hearing is scheduled for a final determination of the

22  settlement).[3]

23       Lead Plaintiff and its counsel believe that the Settlement meets the criteria for preliminary

24  approval and is well within the range of what might be approved as fair, reasonable, and adequate.

25  Indeed, Lead Plaintiff's counsel, who are well-respected and experienced in prosecuting securities

26

27  ───────────────
   [3]   As stated in the *Manual for Complex Litigation* §13.14, at 173 (4th ed. 2017), "[f]irst, the judge

28  reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a
   hearing.  If so, the final decision on approval is made after the hearing."

1  class actions, have concluded that the Settlement is a favorable resolution of this complex action and

2  is in the best interest of the Class.  This conclusion is based on all the circumstances present here,

3  including the substantial risk, expense, and uncertainty in the pending decision on the motion for

4  class certification (Dkt. No. 98) and continuing litigation through discovery, expert discovery, and to

5  trial; the relative strengths and weaknesses of the claims and defenses asserted; the serious disputes

6  between the parties concerning liability, causation, and damages; and past experience in litigating

7  similar complex actions.  As this district recognizes, "'[t]he recommendations of Plaintiffs' Counsel

8  should be given a presumption of reasonableness.'"  *In re Omnivision Techs.*, 559 F. Supp. 2d 1036,

9  1043 (N.D. Cal. 2007) (citation omitted).

10      Accordingly, Lead Plaintiff respectfully requests that this Court enter the Notice Order that:

11  (1) grants preliminary approval of the Settlement; (2) certifies the Class for settlement purposes;

12  (3) approves the proposed form and method of giving notice of the Settlement to the Class;

13  (4) directs that the notice be given to Class Members as approved by the Court; and (5) sets the date

14  for the hearing at which the Court considers: (i) the parties' request for final approval of the

15  Settlement and entry of the Final Order and Judgment; (ii) the Plan of Allocation of settlement

16  proceeds; and (iii) Lead Counsel's request for an award of attorneys' fees and expenses and for an

17  award of time and expenses to Lead Plaintiff.

18  **II.      SUMMARY OF THE LITIGATION**

19      Imperva provides data security solutions focused on providing enterprises database security

20  through its flagship product, SecureSphere.  Third Amended Complaint for Violation of the Federal

21  Securities Laws (Dkt. No. 64) ("Complaint"), ¶34.  The initial complaint in this action was filed on

22  April 11, 2014, in the United States District Court for the Northern District of California.  On

23  August 7, 2014, the Court appointed Delaware as lead plaintiff, and its counsel, Robbins Geller

24  Rudman & Dowd LLP ("Robbins Geller"), as lead counsel.  Dkt. No. 29.

25      Lead Plaintiff filed the Amended Complaint for Violation of the Federal Securities Laws on

26  October 10, 2014.  Dkt. No. 33.  The amended complaint alleged violations of §10(b) of the

27  Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, against

28  Imperva and Individual Defendants Shlomo Kramer and Terrence J. Schmid for materially

1   misrepresenting Imperva's competitive position against International Business Machines

2   Corporation ("IBM").  It also asserted claims under §20(a) of the Exchange Act against Defendants

3   as control persons.  On September 17, 2015, following briefing on Defendants' motion to dismiss

4   and oral argument, the Court granted the motion to dismiss with leave to amend.  Dkt. No. 53.

5        After resolving issues related to the amended complaint's scope, Dkt. Nos. 56-63, Lead

6   Plaintiff filed the operative Complaint on January 13, 2016.  Dkt. Nos. 63-64.  Defendants moved to

7   dismiss the Complaint, Dkt. Nos. 67, 71, which the Court granted in part and denied in part.  Dkt.

8   No. 74.  Thereafter, on September 7, 2016, Defendants filed their answers, which denied all claims

9   in the Complaint and asserted certain defenses thereto.  Dkt. Nos. 78, 92, 96.

10        Lead Plaintiff and Defendants have since engaged in extensive discovery.  Lead Plaintiff

11   pursued documents from Defendants and subpoenaed 31 non-parties, resulting in the production of

12   over 669,000 pages of documents.  Lead Plaintiff deposed Imperva pursuant to Rule 30(b)(6), and, at

13   the time this Settlement was reached, was preparing for numerous additional fact witness

14   depositions.  The parties had also exchanged extensive written discovery.

15        On October 19, 2016, Lead Plaintiff moved to certify the Class, to appoint Delaware as class

16   representative, and to appoint Robbins Geller as class counsel.  Dkt. No. 98.  Briefing on the motion

17   concluded on May 15, 2017, and the Court heard oral argument on May 24, 2017.  In connection

18   with class certification, the parties had engaged in significant class discovery, including the

19   depositions of representatives from Delaware and its investment manager, and the depositions of the

20   parties' respective experts in market efficiency, damages methodologies, and price impact.  The

21   Court had not yet issued a decision on Lead Plaintiff's class certification motion at the time of this

22   Settlement.

23        On February 16, 2017, the parties engaged in an in-person mediation before the Honorable

24   Layn R. Phillips (Ret.), a former federal judge with substantial experience mediating cases under the

25   federal securities laws.  The mediation was preceded by submission of extensive mediation

26   statements and exhibits.  The February 16 session was attended by Lead Plaintiff's counsel,

27   Defendants' counsel, and representatives of Imperva, but proved unsuccessful.  In June 2017, Judge

28

1    Phillips resumed his efforts to help the parties resolve the matter and issued a mediator's proposal to

2    settle the Litigation, which was accepted by all parties in July 2017.

3    **III.    THE SETTLEMENT**

4           The Settlement provides a cash benefit to the Class in the amount of $19 million, for

5    distribution to eligible Class Members after payment from the Settlement Fund of Notice and

6    Administration Expenses, Court-awarded attorneys' fees and expenses, any reimbursement of

7    expenses to Lead Plaintiff for its time and expenses incurred in representing the Class, and Taxes

8    and Tax Expenses (the "Net Settlement Fund").[4]   The Net Settlement Fund will be distributed to

9    Authorized Claimants (*i.e.*, Class Members who submit valid Proof of Claim and Release forms and

10   whose claims have been allowed pursuant to the Stipulation) in accordance with the Plan of

11   Allocation described in the Notice.[5]  A Class Member's recovery will depend on the (i) number of

12   valid Proof of Claim and Release forms submitted by Class Members, (ii) when he, she or it

13   purchased or acquired and sold Imperva securities, and (iii) the number of the shares purchased or

14   acquired and sold.  The Notice states that the per share recovery before deduction of Court-approved

15   fees and expenses is $1.59.  Stipulation, Ex. A-1 at 2.  This is approximately 8.3% of what Class

16   Members would receive, before deduction of Court-approved fees and expenses, if Lead Plaintiff

17   were to prevail on each of its claims.

18          The Plan of Allocation, discussed below, which was drafted with the assistance of Lead

19   Plaintiff's damages consultant, is based on an out-of-pocket measure of damages consistent with

20

21

22

23   ----

[4]      Lead Plaintiff seeks the appointment of Gilardi & Co. LLC ("Gilardi") as Claims Administrator.
24   *See* §VII, *infra*.  The estimated cost of Notice and Administration Expense is approximately
     $262,500.  *See* Joaquin Decl., ¶21.  At 1.38% of the Settlement Amount, these costs are "consistent
25   with those incurred in other securities settlements" and therefore reasonable in relation to the value
     of the Settlement.  *Id.*

26   [5]      While the Plan of Allocation is considered separately from the fairness of the Settlement, the
27   standard for approval of a Plan of Allocation is governed by the same standards of review applicable
     to the Settlement – the plan must be fair, reasonable, and adequate.  *Class Plaintiffs v. Seattle*, 955
28   F.2d 1268, 1284 (9th Cir. 1992).

1   Lead Plaintiff's §10(b) claim, takes into account the alleged disclosure date, the Court's May 16,

2   2016 order, and treats all potential claimants in a fair and equitable fashion.[6]  *See* §VI, *infra*.

3         Any amount remaining below $5,000, after distributions have taken place, will be donated to

4   the Council of Institutional Investors ("CII").  Stipulation, ¶5.6.  This *cy pres* recipient is appropriate

5   in this securities class action as the purpose of CII is to advocate for effective corporate governance

6   and shareholders rights.  *See* www.cii.org.

7         The scope of the release is reasonable and is set forth in the Stipulation under the definition

8   of "Released Claims" (Stipulation, ¶1.25).  It is properly tethered to the claims asserted or which

9   could have been asserted and is also limited to the Class Period.  *Id.*  Other than releasing unknown

10  claims or other claims that could have been brought in the action, there are no differences between

11  the claims to be released and the claims set out in the Complaint.

12        A litigation class has not been certified.  The proposed Class for settlement purposes,

13  discussed below in connection with the elements of Rule 23, is identical to the Class alleged and the

14  Class proposed in Lead Plaintiff's motion for class certification, filed October 19, 2017 (Dkt. No.

15  98), the only difference being those excluded from the Class.[7]

16        Although it is not clear whether the notice provisions of the Class Action Fairness Act,

17  28 U.S.C. §1715 *et seq.* ("CAFA"), were intended to apply to class actions brought pursuant to the

18  federal securities laws, Defendants will be providing CAFA notice.  To that end, Defendants shall,

19  no later than September 10, 2017 (ten calendar days from the date of the filing of the Stipulation

20  with the Court), serve upon the appropriate state official of each state in which a Class Member

21  resides and the Attorney General of the United States a notice of the proposed Settlement in

22  compliance with the requirements of the CAFA.

---

23  [6]   The Plan of Allocation is set forth in the Notice, which is attached to the Stipulation as Exhibit
24  A-1.

25  [7]   The operative Complaint excludes from the class "defendants, directors and officers of Imperva
26  and their families and affiliates."  ¶137.  Those excluded from the Class in the Settlement is more
    specific and includes: (a) all Defendants and their immediate families, (b) Imperva's former and
    current officers and directors, and their immediate families, and (c) any entity in which these
27  excluded persons have a controlling interest.  Also excluded from the Class are those Persons who
    validly and timely request exclusion from the Class pursuant to the terms of the Stipulation and its
28  related Exhibits.  *See supra*, n.2.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT - 4:14-cv-01680-PJH                                                    - 6 -

1    The parties reached the Settlement with substantial differences of opinion about the merits of

2    the case.  Defendants denied that they engaged in any wrongdoing and that they caused any damages

3    to Lead Plaintiff and the Class.  Defendants also contended that even if Lead Plaintiff proved that

4    Defendants' statements about Imperva's competition against IBM were materially false and

5    misleading, they did not cause any damages because none of the disclosures at the end of the Class

6    Period related to the fraud alleged in the Complaint.  Although Lead Plaintiff disagreed with

7    Defendants' denials and contentions regarding loss causation and damages, the risk that the Court or

8    a jury would agree with Defendants was considered by Lead Plaintiff when evaluating whether to

9    settle the case.  In the end, the parties agreed to the Settlement because of the uncertainties of

10   continued litigation.

11   **IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

12          **A.    The Standards for Judicial Approval of Class Action Settlements**

13          As a matter of public policy, settlement is a strongly favored method for resolving disputes.

14   *See Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).  This is

15   especially true in complex class actions.  *See Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d

16   615, 625 (9th Cir. 1982).

17          Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be

18   dismissed or compromised, notice must be given in the manner directed by the court, and judicial

19   approval must be obtained.  Fed. R. Civ. P. 23(e).  At the final approval hearing, the Court will be

20   asked to make a final determination as to whether the Settlement is fair, reasonable, and adequate

21   after notice to the Class.  At this time, Lead Plaintiff requests only that the Court grant preliminary

22   approval of the Settlement in order to notify Class Members of the terms of the Settlement, their

23   opportunity to be heard, and their options with respect to the Settlement.

24          "The Court's task at the preliminary approval stage is to determine whether the settlement

25   falls 'within the range of possible approval.'"  *Booth v. Strategic Realty Tr., Inc.*, No. 13-cv-04921-

26   JST, 2015 WL 3957746, at *6 (N.D. Cal. June 28, 2015) (quoting *in re Tableware Antitrust Litig.*,

27   484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)); *see also In re Zynga Inc. Sec. Litig.*, No. 12-cv-

28   04007-JSC, 2015 WL 6471171, at *8 (N.D. Cal. Oct. 27, 2015) (for the determination of preliminary

1 approval, "'the settlement need only be **_potentially_** fair, as the Court will make a final determination

2 of its adequacy at the hearing on Final Approval'") (citation omitted). "Preliminary approval of a

3 settlement is appropriate if 'the proposed settlement appears to be the product of serious, informed,

4 non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential

5 treatment to class representatives or segments of the class, and falls within the range of possible

6 approval.'" _Tadepalli_, 2015 WL 9196054, at *5 (citation omitted).

7       Lead Plaintiff is now requesting the Court take the first step in the process and grant

8 preliminary approval of the Settlement.   Here, the Settlement enjoys a presumption of

9 reasonableness because it is the product of extensive arm's-length negotiations conducted by

10 experienced and capable counsel with a firm understanding of the strengths and weaknesses of their

11 respective client's positions after extensive discovery.[8] _In re Wireless Facilities, Inc. Sec. Litig. II_,

12 253 F.R.D. 607, 612 (S.D. Cal. 2008) (granting preliminary approval of the settlement where "[b]oth

13 parties' counsel are experienced in class actions, engaged in arms-length negotiations, weighed the

14 strengths and weaknesses of the case and examined the risks associated with litigation"); _In re China_

15 _Medicine Corp. Sec. Litig._, No. 8:11-1061-JST (ANx), 2013 WL 12126754, at *8 (C.D. Cal.

16 May 16, 2013) ("'The recommendations of plaintiffs' counsel should be given a presumption of

17 reasonableness.'") (citation omitted); _Omnivision_, 559 F. Supp. 2d at 1043 (same); _Booth_, 2015 WL

18 3957746, at *8 (experienced counsel from both sides endorsing settlement weighs in favor of

19 preliminary approval).   And with a recovery of 8.3% of recoverable damages if Lead Plaintiff was to

20 prevail on each of its claims, it is well within the range of possible approval in complex securities

21 class action settlements.   Bulan, et al., _supra_, at 7, Figure 6 (2.5% median recovery for 2016 securities

22 class action settlements).

23

24

25

---

26 [8]    _Linney v. Cellular Alaska P'ship_, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300, at *16
(N.D. Cal. July 18, 1997) ("the fact that the settlement agreement was reached in arm's length

27 negotiations, after relevant discovery ha[s] taken place create[s] a presumption that the agreement is
fair"), _aff'd_, 151 F.3d 1234 (9th Cir. 1998); _Ellis v. Naval Air Rework Facility_, 87 F.R.D. 15, 18

28 (N.D. Cal. 1980), _aff'd_, 661 F.2d 939 (9th Cir. 1981).

### B.     Reference to Factors Considered by Courts in Granting Final Approval of Class Action Settlements Demonstrates that the Settlement Should Be Preliminarily Approved

The standard for determining whether to grant final approval to a class action settlement is whether the proposed settlement is "fundamentally fair, adequate, and reasonable." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (setting forth fairness and adequacy factors to be considered for approval of class settlement) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  As the Ninth Circuit explained in *Mego Fin.*:

> "Assessing a settlement proposal requires a district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement." . . .  In addition, the settlement may not be the product of collusion among the negotiating parties.

213 F.3d at 458 (quoting *Hanlon*, 150 F.3d at 1026).  Not all of these factors will apply to every class action settlement.  Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).  The district court exercises its "sound discretion" in approving a settlement. *Ellis*, 87 F.R.D. at 18.  As the Ninth Circuit has stated: "Ultimately, the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice v. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (citation omitted).

The Settlement here, which represents 8.3% of Lead Plaintiff's assessment of best-case recoverable damages, easily satisfies the standard for preliminary approval.

### 1.     The Settlement Is the Product of Arm's-Length Negotiations and Not the Product of Collusion

In approving a class action settlement, the Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriquez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  As discussed above, the terms of the Settlement are the product of arm's-length negotiations between the parties with the substantial assistance of Judge Phillips (Ret.). *See Kmiec v. Powerwave Techs., Inc.*, No. SA CV 12-0022-CJC (JPRx), 2015 WL 12914343, at *5 (C.D. Cal. Dec. 4, 2015) ("'[t]he assistance of an experienced mediator in the settlement process

1    confirms that the settlement is non-collusive'") (citation omitted).  The negotiations were at all times

2    hard-fought and at arm's length.  During these negotiations, Lead Counsel zealously advanced Lead

3    Plaintiff's positions and were prepared to continue to litigate rather than accept a settlement that was

4    not in the best interest of the Class.

5                    **2.       The Extent of Discovery Completed and the Stage of the
                              Proceedings**
6

7         "A settlement following sufficient discovery and genuine arms-length negotiation is

8    presumed fair."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal.

9    2004).  The Settlement in this Litigation followed significant discovery.  Prior to the Settlement, the

10   parties had completed extensive paper discovery.  Lead Counsel had gathered over 669,000 pages of

11   documents produced by Defendants and 31 non-parties.  When the parties reached a settlement

12   agreement, Lead Counsel was in the process of reviewing, cataloging and prioritizing the documents

13   in preparation for fact witness depositions, which were immediately upcoming, as well as organizing

14   documents in advance of expert disclosures.  In addition, Lead Counsel had taken Imperva's

15   deposition pursuant to Federal Rule of Civil Procedure 30(b)(6).  Armed with this significant amount

16   of information, Lead Counsel was able to make an informed assessment of the strengths and

17   weaknesses of the case to make a determination on behalf of the Class about whether to settle.

18        All of the facts gathered thus far in discovery were added to the facts obtained during the

19   investigation to amend the complaints, which likewise informed Lead Plaintiff's assessment of the

20   case's strengths and weaknesses.  Lead Counsel had conducted an extensive investigation of the

21   facts alleged, which included a thorough review of public filings, analyst reports, and media

22   coverage regarding Imperva, interviews of witnesses with the assistance of private investigators, and

23   consultation with experts.  The parties also participated in settlement negotiations that involved an

24   analysis of the Class's claims as well as Defendants' defenses.  As a result, Lead Counsel was able

25   to assess the strengths and weaknesses of the claims asserted and resolve the Litigation on a highly

26   favorable basis for the Class, despite challenging defenses by Defendants at every step of the

27   Litigation.  *Zynga*, 2015 WL 6471171, at *9 ("The use of a mediator and the presence of discovery

28   'support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.'")

1   (citation omitted); *Powerwave*, 2015 WL 12914343, at *5 (fairness satisfied in preliminary approval

2   determination since the litigation lasted "more than three years," had "substantial discovery," and

3   used a "private mediation session before a neutral mediator").

### 3.   The Recommendations of Experienced Counsel

5       Lead Plaintiff, through its counsel, having carefully considered and evaluated, *inter alia,* the

6   relevant legal authorities and evidence adduced to date to support the claims asserted, the likelihood

7   of prevailing on these claims, the risk, expense, and duration of continued litigation, and the likely

8   appeals and other subsequent proceedings, has concluded that the Settlement is fair, reasonable, and

9   adequate, and in the best interest of the Class.   Lead Counsel have significant experience in

10  securities and other complex class action litigation, and have negotiated numerous other class action

11  settlements throughout the country.  *See* www.rgrdlaw.com.  It is well-established that significant

12  weight should be attributed to the belief of experienced counsel that settlement is in the best interest

13  of the class.  *See, e.g.*, *Nat'l Rural*, 221 F.R.D. at 528 ("'"Great weight" is accorded to the

14  recommendation of counsel, who are most closely acquainted with the facts of the underlying

15  litigation.'") (citation omitted).

### 4.   The Risks of Proving Liability, Causation, and Damages

17      To determine whether a class action should be finally approved, the Court must balance the

18  continuing risks of litigation against the benefits afforded to the Class and the immediacy and

19  certainty of a substantial recovery.  *Mego Fin.*, 213 F.3d at 458; *Nat'l Rural*, 221 F.R.D. at 526 (A

20  court may consider the "'vagaries of litigation and compare the significance of immediate recovery

21  by way of the compromise to the mere possibility of relief in the future, after protracted and

22  expensive litigation.  In this respect, "It has been held proper to take the bird in hand instead of a

23  prospective flock in the bush."'") (citation omitted); *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC,

24  2016 WL 537946, at *9 (N.D. Cal. Feb. 11, 2016) ("'it is the very uncertainty of outcome in

25  litigation and avoidance of wasteful and expensive litigation that induce consensual settlements'")

26  (citation omitted).

27      Although Lead Plaintiff and its counsel believe that the Class's claims have substantial merit,

28  they recognize the significant risk and expense necessary to prosecute Lead Plaintiff's claims against

1   Defendants through the completion of discovery, expert discovery, summary judgment, trial, and

2   subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails.

3   *See, e.g.*, *Wireless Facilities*, 253 F.R.D. at 612 (preliminarily approving settlement where

4   "[l]iability remains uncertain" since "it appears to the Court that plaintiffs have a viable claim

5   regarding the alleged securities fraud and Defendants have a viable defense against such claims").

6          Likewise, the determination of causation and damages, like the determination of liability, is a

7   complicated and uncertain process, involving conflicting expert testimony.  *In re Tyco Int'l, Ltd.*,

8   535 F. Supp. 2d 249, 260-61 (D.N.H. 2007) ("Proving loss causation would be complex and

9   difficult.  Moreover, even if the jury agreed to impose liability, the trial would likely involve a

10  confusing 'battle of the experts' over damages.").  The reaction of a jury to such complex and

11  contradictory expert testimony is highly unpredictable, and in such a battle, Lead Counsel recognize

12  the possibility that a jury could be swayed by convincing experts for the Defendants, and find there

13  were no damages or only a fraction of the amount of damages contended.  *See, e.g.*, *In re Warner

14  Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) (approving settlement where "it is

15  virtually impossible to predict with any certainty which testimony would be credited, and ultimately,

16  which damages would be found to have been caused by actionable, rather than the myriad

17  nonactionable factors such as general market conditions"), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *In re

18  Veeco Instruments Sec. Litig.*, No. 05 MDL 0165 (CM), 2007 U.S. Dist. LEXIS 85629, at *30

19  (S.D.N.Y. Nov. 7, 2007) ("The jury's verdict with respect to damages would depend on its reaction

20  to the complex testimony of experts, a reaction which at best is uncertain.").

21         Finally, because the motion for class certification was still pending before the Court, the

22  Class faced the risk that it would not be certified and would have to go forward with the Litigation

23  on an individual basis.

24                      **5.**     **The Expense and Likely Duration of Further Litigation**

25         Another factor courts consider in determining the fairness of a settlement is the complexity,

26  expense, and likely duration of continued litigation.  *See Mego Fin.*, 213 F.3d at 459; *Officers for

27  Justice*, 688 F.2d at 625.  If not for this Settlement, the Litigation would have continued to be

28  fiercely contested by the parties.  Continued litigation would be complex, costly, and of significant

duration.  Depositions would have to be taken, experts would need to be designated and expert discovery completed, Defendants' expected motions for summary judgment after discovery would have to be briefed and argued, and a trial could take weeks to complete.  Moreover, any judgment favorable to the Class would be the subject of post-trial motions and appeal, which would prolong the case for years with the ultimate outcome uncertain.[9]  Absent settlement, this Litigation would have ultimately developed into a battle of competing facts and inferences, competing experts, and a credibility toss-up to be decided by the jury.  By contrast, the $19 million all cash Settlement provides a favorable recovery that is immediately realizable by the Class and eliminates all of the risk, delay, and expense of continued litigation.

An evaluation of the benefits of settlement must also be tempered by a recognition that any compromise involves concessions on the part of all of the settling parties.  Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citation omitted).  In sum, the Settlement is the product of informed arm's-length negotiations and is well within the range of possible approval.  While Lead Plaintiff and its counsel firmly believe that the Settlement merits final approval, the Court need not make that determination at this time.  The Court is only being asked to permit notice of the terms of the Settlement to be sent to the Class and to schedule a hearing pursuant to Federal Rule of Civil Procedure 23(e) to consider any expressed views by Class Members of the fairness of the Settlement,

---

[9]    The risk of appeal reversing a successful verdict is not merely academic as a securities class action tried by Robbins Geller attorneys obtained a verdict in favor of the plaintiff class seven years after the case was filed, had judgment entered 11 years after the case was filed, and then had a major portion of the verdict reversed 13 years after the case was filed.  *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015).  The case was finally settled on the day a second trial was scheduled to begin – 14 years after the case was filed – ultimately bringing a successful resolution of the case to class members.  Clearly, prevailing at trial often does not result in an immediate cash payment to the victimized class members: any appeal would create the risk of reversal, in which case the Class would receive nothing after having prevailed at trial.  *See also In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (after a lengthy trial, jury returned a verdict against plaintiffs and the action was dismissed).  Further, a successful jury verdict does not eliminate the risk to the class.  *See In re Apple Comput. Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (court entered judgment notwithstanding the verdict for the individual defendants and ordered a new trial with respect to the corporation).

the Plan of Allocation, and Lead Counsel's request for an award of fees and expenses.  5 James Wm. Moore, *Moore's Federal Practice* §23.165[3], at 23-587 to 23-588 (3d ed. 2010).

## V.   THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES

### A.   Standard Applicable to Class Certification

Within the Ninth Circuit, courts have repeatedly endorsed the use of class action procedures to resolve claims under the federal securities laws.  Indeed, "the Ninth Circuit and courts in this district hold a liberal view of class actions in securities litigation."  *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991); *see also In re THQ, Inc. Sec. Litig.*, No. CV 00-1783AHM (EX), 2002 U.S. Dist. LEXIS 7753, at *8-*9 (C.D. Cal. Mar. 22, 2002) ("'the law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws'") (citation omitted); *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009) ("'Rule 23 is . . . liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing.'") (citation omitted); *In re Verisign, Inc. Sec. Litig.*, No. C 02-02270 JW, 2005 U.S. Dist. LEXIS 10438, at *31-*32 (N.D. Cal. Jan. 13, 2005) ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants.").

Lead Plaintiff requests that the Court certify a Class for settlement purposes, the scope of which is virtually identical to the class alleged in the Complaint and for which it moved for certification.  The only minor difference is those who are excluded from the Class.  *See* n.7 above.  It is defined as all persons or entities who purchased or otherwise acquired Imperva securities between May 2, 2013 and April 9, 2014, inclusive.  Excluded from this definition are (a) the Defendants and their immediate families, (b) the directors and officers of Imperva at all relevant times, and (c) their legal representatives, heirs, successors, or assigns.  Also excluded from the Class are those Persons who timely and validly request exclusion from the Class pursuant to the terms of the Stipulation and its related Exhibits.

**B.     The Settlement Meets the Requirements of Rule 23(a)**

The requirements of Federal Rule of Civil Procedure 23 and relevant case law demonstrates that this Class should be certified for settlement purposes.  Under Rule 23(a), a class may be certified if: (1) it is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**1.     Rule 23(a)(1): Numerosity**

Rule 23(a)(1) permits class certification if "the class is so numerous that joinder of all members is impractical."  To satisfy the numerosity requirement, "[a] specific minimum number is not necessary, and plaintiff[s] need not state the exact number of potential class members." *Richie v. Blue Shield of Cal.*, No. C-13-2693 EMC, 2014 WL 6982943, at *15 (N.D. Cal. Dec. 9, 2014).  Rather, "numerosity is presumed where the plaintiff class contains forty or more members," *Cooper*, 254 F.R.D. at 634; *see also* William B. Rubenstein, *Newberg on Class Actions* §3:12 (5th ed. 2015) (same).

While the exact number of Class Members is unknown to Lead Plaintiff at this time, hundreds, if not thousands, of persons and/or entities purchased or acquired Imperva shares during the Class Period.  In fact, Imperva had over 24 million shares outstanding and actively trading on the NYSE during the Class Period.  *See* Expert Report of Bjorn I. Steinholt, CFA, Dkt. No. 98-2, ¶22.  "The Court certainly may infer that, when a corporation has millions of shares trading on a national exchange, more than 40 individuals purchased stock over the course of more than a year." *Cooper*, 254 F.R.D. at 634 (finding numerosity).

**2.     Rule 23(a)(2): Questions of Law or Fact Are Common**

Federal Rule of Civil Procedure 23(a)(2) requires that there be questions of law or fact common to the class.  To satisfy the commonality requirement, it is not necessary that all questions of law and fact be common to the entire class; instead, "'"[e]ven a single [common] question'" will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (citations omitted).  Commonality

1   "is easily met in cases where class members all bought or sold the same stock in reliance on the same

2   disclosures made by the same parties, even when damages vary."  William B. Rubenstein, *Newberg*

3   *on Class Actions* §22:21 (4th ed. 2016).

4          Here, Lead Plaintiff contends that the nature of the misrepresentations detailed in the

5   Complaint – the most crucial issue in a securities fraud case – present questions of fact and law

6   common to all Members of the Class.  Complaint, ¶139.  Lead Plaintiff alleges that Defendants'

7   public statements were materially misleading and did not fairly present the financial condition of the

8   Company, thereby deceiving investors as to the Company's true business condition and the value of

9   Imperva's securities during the Class Period.  All Class Members are alleged to have been harmed as

10  a result of a common course of conduct arising from allegedly material misrepresentations and

11  omissions that Defendants made to the investing public, including: (a) whether Defendants violated

12  the Exchange Act; (b) whether Defendants omitted and/or misrepresented material facts; (c) whether

13  Defendants knowingly or recklessly disregarded that their statements and omissions were false and

14  misleading; (d) whether the price of Imperva's securities were artificially inflated as a result of

15  Defendants' misrepresentations and/or omissions; and (e) whether and to what extent disclosure of

16  the truth regarding Defendants' omissions and/or misrepresentations of material facts caused Class

17  Members to suffer economic loss and damages.  These common issues satisfy the commonality

18  prong.  *See In re Bridgepoint Educ., Inc. Sec. Litig.*, No. 12-cv-1737 JM (JLB), 2015 WL 224631, at

19  *5 (S.D. Cal. Jan. 15, 2015) (holding that commonality was satisfied by common questions

20  "including whether [defendant] made false statements, whether those statements were material,

21  whether they were intentionally false, and whether they caused class members' losses").

### 3.      Rule 23(a)(3): Lead Plaintiff's Claims Are Typical

23         Rule 23(a)(3) requires that the class representative's claims and defenses thereto must be

24  "typical" of the claims or defenses of the prospective class.  "The test of typicality is 'whether other

25  members have the same or similar injury, whether the action is based on conduct which is not unique

26  to the named plaintiffs, and whether other class members have been injured by the same course of

27  conduct.'"  *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted).  "'Under the rule's

28  permissive standards, representative claims are "typical" if they are reasonably co-extensive with

1    those of absent class members; they need not be substantially identical.'" *Id*. (quoting *Hanlon*, 150

2    F.3d at 1030).  And where a plaintiff's "claims arise from the same events and conduct that gave rise

3    to the claims of other class members," they are typical of the class.  *Bridgepoint*, 2015 WL 224631,

4    at *5.  Indeed, courts "do not insist that the named plaintiffs' injuries be identical with those of the

5    other class members, only that the unnamed class members have injuries similar to those of the

6    named plaintiffs and that the injuries result from the same, injurious course of conduct."  *Armstrong*

7    *v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).

8          Here, typicality is clearly satisfied.  Lead Plaintiff's claims are founded on the same alleged

9    facts and legal theories as the claims of all other Class Members – *i.e.*, the alleged artificial inflation

10   and consequent market correction of the price of Imperva's stock caused by Defendants' public

11   statements and omissions – and the injury Lead Plaintiff suffered is alleged to be the same as the

12   injury suffered by the proposed Class as a whole.  *Bridgepoint*, 2015 WL 224631, at *5 ("Here,

13   Plaintiffs' claims arise from the same events and conduct that gave rise to the claims of other class

14   members.  They are, therefore, typical of the class.").

15            **4.       Rule 23(a)(4): The Lead Plaintiff is Adequate**

16         Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

17   interests of the class."  "The two key inquiries are (1) whether there are conflicts within the class;

18   and (2) whether plaintiffs and counsel will vigorously fulfill their duties to the class.  The adequacy

19   inquiry also 'factors in competency and conflicts of class counsel.'"  *In re Diamond Foods, Inc.*, 295

20   F.R.D. 240, 252 (N.D. Cal. 2013).  These showings are met here.

21         First, there is no genuine conflict or antagonism between the claims of the proposed Class

22   Representative and those of the other members of the proposed Class.  Lead Plaintiff and each

23   Member of the Class have a strong and identical interest in establishing Defendants' liability and

24   obtaining the maximum amount of damages and reaching the highest possible settlement.  Moreover,

25   Lead Plaintiff has demonstrated its ability and willingness to pursue the Litigation on behalf of the

26   Class as it was actively involved in the Litigation and approved the Settlement.

27         Second, Lead Plaintiff has retained highly qualified counsel, Robbins Geller, to vigorously

28   pursue this Litigation for nearly three years.  Lead Counsel has ably represented Lead Plaintiff and

the proposed Class in this Litigation, successfully challenging Defendants' motion to dismiss, diligently pursuing the Class's certification, and aggressively pursuing the case through discovery. Robbins Geller has a strong record of effectively litigating numerous class actions as lead counsel on behalf of major institutional investors in cases throughout the country. *See, e.g.*, *Cooper*, 254 F.R.D. at 636 ("It is undisputable that class counsel in this case has extensive experience prosecuting suits of this nature. [Robbins Geller] specializes in securities fraud actions and achieved success as lead counsel in one of the largest and highest-profile securities cases of the last decade, the *Enron* case.").

## C. The Class Meets the Requirements of Rule 23(b)(3)

### 1. Common Questions of Law or Fact Predominate

Rule 23(b)(3) requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members." This requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997). "Class certification under Rule 23(b)(3) is proper when common questions represent a significant portion of the case and can be resolved for all members of the class in a single adjudication." *Diamond Foods*, 295 F.R.D. at 246 (citing *Hanlon*, 150 F.3d at 1022). Although more demanding than Rule 23(a)'s commonality requirement, the Supreme Court has observed that the predominance requirement is "a test readily met" in securities class actions. *Amchem*, 521 U.S. at 625; *Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 429 (D. Ariz. 2013) (predominance is "'readily met in certain cases alleging . . . securities fraud'") (quoting *Amchem*, 521 U.S. at 625); *Cooper*, 254 F.R.D. at 632 ("As the Ninth Circuit has so aptly stated, securities fraud cases fit Rule 23 'like a glove.'") (citation omitted).

Here, common questions of law and fact clearly predominate, and include: (i) whether Defendants engaged in a scheme to defraud and intentionally or recklessly made materially false and misleading statements and omissions; and (ii) whether this scheme and these false and misleading statements and omissions caused damages to Members of the Class as a whole. As in most securities fraud class action cases, the answer to each of these questions will be tried and proven by common evidence because the alleged misconduct affected all Class Members in the same manner, *i.e.*, false and misleading statements and omissions artificially inflated the price of Imperva common stock.

*Bridgepoint*, 2015 WL 224631, at *6 ("In the typical securities-fraud case, as in this case, the factual and legal issues related to most of these elements are common to the class, so the requirements for class certification are usually 'readily met.'") (quoting *Amchem*, 521 U.S. at 625).

### 2.    A Class Action Is a Superior Method of Adjudication

Finally, Rule 23(b)(3) also requires that the action be superior to other available methods for the fair and efficient adjudication of the controversy.  The rule lists several matters pertinent to this finding:

> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;

> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> (D)    the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D); *see Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 937 (9th Cir. 2009).  Each factor counsels in favor of class certification.  *See, e.g.*, *McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 615 (S.D. Cal. 2007) (class action is superior to individual suits when to allow individual suits would "'clog[] the federal courts with innumerable individual suits litigating the same issues repeatedly'" and the plaintiffs assert complex claims that would "be very costly to litigate" and each claim is for a relatively small amount) (citation omitted).  Moreover, certification of a class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner.

For all of the foregoing reasons, this Court should find, for settlement purposes only, that the Class meets the requirements for the certification of a class pursuant to Federal Rule of Civil Procedure 23(a) and at least one of the factors enumerated in Rule 23(b).  Certification of the Class is therefore warranted.

### D.    Lead Counsel Should Be Appointed Class Counsel Under Rule 23(g)

Rule 23(g)(1) of the Federal Rules of Civil Procedure states that "a court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g)(1).  Lead Plaintiff respectfully requests that

1   Robbins Geller be appointed Lead Counsel for the Class.  As discussed above, Robbins Geller has

2   been and will continue to fairly and adequately represent the Class.  Counsel are knowledgeable

3   about the applicable law, extremely experienced in handling class actions, have performed

4   substantial work in pursuing the Class's claims here and in reaching a settlement, and have

5   committed the necessary resources to representing the Class.  Robbins Geller is among the nation's

6   preeminent law firms in this area of practice.  *See* Robbins Geller Firm Résumé, Dkt. No. 98-4.

7   Lead Counsel has already undertaken a vigorous prosecution of this action, including conducting an

8   extensive investigation of the claims, defeating, in part, Defendants' motion to dismiss, engaging in

9   discovery, and pursuing class certification.  Accordingly, Robbins Geller fulfills the requirements of

10  Rule 23(g), and the Court should appoint it as Class Counsel.

11  **VI.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

12          Lead Counsel also seek preliminary approval of the Plan of Allocation of the settlement

13  proceeds, which is set forth in the Notice to be mailed to Class Members.  The Plan of Allocation

14  provides an equitable basis to allocate the Net Settlement Fund among all Class Members who

15  submit an acceptable Proof of Claim and Release.  The Plan of Allocation was developed by Lead

16  Counsel, with the assistance of a damages expert, and reflects the theories of causation and damages

17  they would have presented at trial, as well as the statutory 90-day look back amount.  Assessment of

18  a plan of allocation in a class action under Rule 23 is governed by the same standards of review

19  applicable to the settlement as a whole – the plan must be fair and reasonable.  *Class Plaintiffs*, 955

20  F.2d at 1284.

21          The objective of a plan of allocation is to provide an equitable basis upon which to distribute

22  the settlement fund among eligible class members.  An allocation formula must be "rationally related

23  to the relative strengths and weakness of the case."  *Rosenburg v. IBM*, No. CV06-00430 PJH, 2007

24  WL 128232, at *5 (N.D. Cal. Jan. 11, 2007) (Hamilton, J.).  Here, the Plan of Allocation is based on

25  Lead Plaintiff's economic expert's analysis, is also based on an out-of-pocket theory of damages

26  consistent with §10(b), and reflects an assessment of the damages that Lead Plaintiff contends could

27  have been recovered under the theories asserted in the case.  An individual Class Member's recovery

28  under the Plan of Allocation will depend on a number of factors, including the number of valid

1  claims filed by other Class Members and how many shares of Imperva common stock he, she or it

2  purchased or acquired during the Class Period and when that Class Member bought, acquired and

3  sold the shares.  Lead Counsel believes that the Plan of Allocation will result in a fair and equitable

4  distribution of the proceeds among Class Members who submit valid claims.

5  **VII.   THE PROPOSED NOTICE PROGRAM IS ADEQUATE AND**
   **CONSTITUTES DUE AND SUFFICIENT NOTICE UNDER RULE 23,**
6  **DUE PROCESS, AND THE PSLRA**

7       Rule 23(e) governs notice requirements for settlements or "compromises" in class actions.

8  The Rule provides that a class action shall not be dismissed or compromised without the approval of

9  the court, and notice of the proposed dismissal or compromise shall be given to all members of the

10  class in such manner as the court directs.  Fed. R. Civ. P. 23(e).  In addition, the Rule provides that

11  "[t]he court must direct notice in a reasonable manner to all class members who would be bound by

12  the proposal."  Fed. R. Civ. P. 23(e)(1).

13      Here, the proposed Notice is to be disseminated to all persons who fall within the definition

14  of the Class and whose names and addresses can be identified with reasonable effort.  In addition,

15  the mailed Notice will be supplemented with a summary notice (the "Summary Notice"), to be

16  published once in the national edition of *The Wall Street Journal* and once over a national newswire

17  service.  The Notice and Summary Notice are attached to the Stipulation and the Notice Order as

18  Exhibits A-1 and A-3.  In addition, Gilardi, the proposed Claims Administrator, will establish a

19  settlement website, www.impervasecuritieslitigation.com, to allow Class Members easy access to

20  additional settlement-related information and documents.  A complete description of the proposed

21  Notice plan is set forth in the Joaquin Declaration at ¶¶4-17.

22      Lead Plaintiff also respectfully requests the appointment of Gilardi as Claims Administrator

23  to supervise and administer the notice procedure, as well as the processing of claims.  Gilardi will be

24  responsible for, among other things, mailing the Notices to the Class, publishing the Summary

25  Notice, reviewing claims from Class Members, and compiling a distribution schedule to Class

26  Members.  Gilardi is a highly respected and experienced claims administrator, with thousands of

27  cases administered and billions of dollars in assets distributed.  *See* www.gilardi.com.  The estimated

28

1  cost of notice and claims administration for this Settlement is approximately $262,500.  Joaquin

2  Decl., ¶21.  This estimate is 1.38% of the Settlement.  *Id.*  This is "consistent with [the costs]

3  incurred in other securities settlements of similar size and complexity" and thus, according to

4  Michael Joaquin of Gilardi, "reasonable."  *Id.*

5      As required by Federal Rule of Civil Procedure 23(c)(2) and the Private Securities Litigation

6  Reform Act of 1995 ("PSLRA") (15 U.S.C. §78u-4(a)(7)), the Notice describes the nature of the

7  Litigation; sets forth the definition of the Class; states the Class's claims; and discloses the right of

8  Class Members to exclude themselves from the Class, as well as the deadline and procedure for

9  doing so and warns of the binding effect of the settlement approval proceedings on Class Members

10  who do not exclude themselves.  In addition, the Notice describes the Settlement; the Settlement

11  Amount, both in the aggregate and on an average per-share basis; explains the proposed Plan of

12  Allocation; states the parties' disagreement over damages and other issues; sets out the amount of

13  attorneys' fees and expenses that counsel for Lead Plaintiff intends to seek in connection with final

14  settlement approval, including the amount of the requested fees and expenses determined on an

15  average per-share basis; provides contact information for Lead Counsel, including a toll-free

16  telephone number; and summarizes the reasons the parties are proposing the Settlement.  The Notice

17  also discloses the date, time, and place of the formal fairness hearing, and the procedures for

18  objecting to the Settlement, the Plan of Allocation, or counsel's request for attorneys' fees and

19  expenses and appearing at the hearing.  The Notice also states that the date of the hearing may

20  change without further notice to the Class and advises Class Members to check the Settlement

21  website or the Court's PACER site to confirm that the date has not been changed.  *See* Notice

22  (Stipulation, Ex. A-1) at 12.  The contents of the Notice therefore satisfy all applicable requirements.

23  **VIII.   ATTORNEYS' FEES AND LEAD PLAINTIFF EXPENSES**

24      As explained in the Notice (Stipulation, Ex. A-1 at 3), Lead Counsel intends to seek an award

25  of attorneys' fees of 25% of the Settlement Amount, plus interest earned thereon.[10]  This is the

26  benchmark percentage in the Ninth Circuit, *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268,

27

28  ───────────────────────
[10]   Lead Counsel will also seek an award of their expenses in an amount not to exceed $400,000.  *Id.*

1    272 (9th Cir. 1989), and is fully justified by the result achieved here – a $19 million all cash

2    recovery which is approximately 8.3% of the estimated recoverable damages.  An award of 25% is

3    also reasonable based on a lodestar crosscheck.  While Lead Counsel's review of their time in this

4    Litigation is not yet complete, it is currently $4.85 million.  A 25% fee, therefore, would represent a

5    0.98% multiplier of Lead Counsel's current lodestar estimate (prior to any judgmental reductions),

6    which does not include the work Lead Counsel will do in connection with final approval and

7    overseeing settlement administration.  Indeed, in *Vizcaino v. Microsoft Corp.*, the Ninth Circuit

8    approved a 28% fee that resulted in a 3.65 multiplier.  290 F.3d 1043, 1052-54 (9th Cir. 2002)

9    (finding multipliers ranged as high as 19.6 though most run from 1.0-4.0).

10         Lead Counsel also intend to seek an award for Lead Plaintiff, pursuant to 15 U.S.C. §78u-

11   4(a)(4), of its time and expenses in representing the Class in an amount up to $25,000.  Lead Counsel

12   believe this amount is fully supported by the substantial work Lead Plaintiff did throughout the

13   Litigation.

14   **IX.    PROPOSED SCHEDULE OF EVENTS**

15         In connection with the preliminary approval of the Settlement, the Court must set a final

16   approval hearing date, dates for mailing the Notice and publication of the Summary Notice,

17   deadlines for objecting to the Settlement, opting out of the Class, and filing papers in support of the

18   Settlement.  Lead Plaintiff proposes the following schedule:

19
20   | Notice and Proof of Claim and Release mailed to Class Members (Notice Order, ¶8) | Within 10 business days after entry of the Notice Order ("Notice Date") |
     |---|---|
21   | Summary Notice published (Notice Order, ¶9) | Within 14 calendar days after the Notice Date |
22
23   | Deadline for filing papers in support of the Settlement, Plan of Allocation, request for an award of attorneys' fees and expenses and Lead Plaintiff's expenses (Notice Order, ¶18) | 35 calendar days prior to the Settlement Hearing |
24
25   | Deadline for requesting exclusion from the Class (Notice Order, ¶14) and deadline for filing objections to the Settlement, Plan of Allocation, or request for attorneys' fees and expenses (Notice Order, ¶16) | 21 calendar days prior to the Settlement Hearing |
26

27

28

| | |
|---|---|
| Deadline for filing reply papers in support of the Settlement, Plan of Allocation, and request for an award of attorneys' fees and expenses (Notice Order, ¶18) | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing (Notice Order, ¶5) | At the Court's convenience, on or after 100 calendar days after the execution of the Notice Order |
| Deadline for submitting Proof of Claim and Release forms (Notice Order, ¶13) | 90 calendar days after the Notice Date |

This schedule is similar to those used and approved by numerous courts in class action settlements and provides due process to Class Members with respect to their rights concerning the proposed Settlement. *See Torrisi*, 8 F.3d at 1374-75.

**X.    CONCLUSION**

For the reasons set forth above, Lead Plaintiff respectfully requests that the court preliminarily approve the Settlement and enter the Notice Order.

DATED:  August 31, 2017                    Respectfully submitted,

                                           ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                           THEODORE J. PINTAR
                                           DOUGLAS R. BRITTON
                                           ASHLEY M. PRICE


                                                 s/ Douglas R. Britton
                                           DOUGLAS R. BRITTON

                                           655 West Broadway, Suite 1900
                                           San Diego, CA  92101-8498
                                           Telephone:  619/231-1058
                                           619/231-7423 (fax)

                                           ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                           SHAWN A. WILLIAMS
                                           One Montgomery Street, Suite 1800
                                           San Francisco, CA  94104
                                           Telephone:  415/288-4545
                                           415/288-4534 (fax)

                                           Lead Counsel for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 31, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 31, 2017.

 s/ Douglas R. Britton
DOUGLAS R. BRITTON

ROBBINS GELLER RUDMAN
 & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  dougb@rgrdlaw.com

# Mailing Information for a Case 4:14-cv-01680-PJH Shankar v. Imperva, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael Albert**
  malbert@rgrdlaw.com

- **Marie Caroline Bafus**
  mbafus@fenwick.com,lkelleybourne@fenwick.com

- **Matthew James Balotta**
  mbalotta@rgrdlaw.com

- **Jennifer Corinne Bretan**
  jbretan@fenwick.com,mbafus@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com,kkeller@fenwick.com

- **Doug Britton**
  dougb@rgrdlaw.com,kathyj@rgrdlaw.com,e_file_sd@rgrdlaw.com,tjohnson@rgrdlaw.com,ldeem@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Andrew J. Brown**
  andrewb@rgrdlaw.com

- **Frank James Johnson**
  frankj@johnsonandweaver.com,paralegal@johnsonandweaver.com,michaelf@johnsonandweaver.com,ceciliar@johnsonandweaver.com

- **Kaitlin O Keller**
  kkeller@fenwick.com,lkelleybourne@fenwick.com

- **Dean S. Kristy**
  dkristy@fenwick.com,kayoung@fenwick.com,lkelleybourne@fenwick.com

- **Felix Shih-Young Lee**
  flee@fenwick.com,tmartin@fenwick.com

- **Tricia Lynn McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com,tjohnson@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Susan Samuels Muck**
  smuck@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com,recordsecf@fenwick.com

- **Ivy T Ngo**
  ingo@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Ashley Price**
  aprice@rgrdlaw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,echang@glancylaw.com,bmurray@glancylaw.com

- **Darren Jay Robbins**
  e_file_sd@rgrdlaw.com

- **Scott H. Saham**
  scotts@rgrdlaw.com

- **Shannon E. Turner**
  sturner@fenwick.com

- **David Conrad Walton**
  davew@rgrdlaw.com

- **Shawn A. Williams**

shawnw@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`