ROBBINS GELLER RUDMAN
   & DOWD LLP
SHAWN A. WILLIAMS (213113)
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
        – and –
THEODORE J. PINTAR (131372)
DOUGLAS R. BRITTON (188769)
ASHLEY M. PRICE (281797)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com
dougb@rgrdlaw.com
aprice@rgrdlaw.com

Lead Counsel for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| VISWANATH V. SHANKAR, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> IMPERVA, INC., et al., <br><br> Defendants. | Case No. 4:14-cv-01680-PJH <br><br> <u>CLASS ACTION</u> <br><br> NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF <br><br> DATE:    January 31, 2018 <br> TIME:    9:00 a.m. <br> CTRM:   3 |

1331075_1

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ...............................................................1

II.  LITIGATION HISTORY .....................................................................4

III. THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS
     ACTION SETTLEMENTS ...................................................................6

IV.  THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
     ADEQUATE..........................................................................................8

     A.   The Settlement Enjoys a Presumption of Reasonableness Because It Is the
          Product of Arm's-Length Settlement Negotiations ................................8

     B.   The Settlement Amount Strongly Supports Approval .............................9

     C.   The Strength of Lead Plaintiff's Case When Balanced Against the Risk,
          Expense, Complexity, and Likely Duration of Further Litigation Supports
          Approval of the Settlement ...................................................................10

          1.   The Risks of Proving Liability....................................................11

          2.   The Risks of Proving Loss Causation and Damages ...............12

          3.   The Complexity, Expense, and Likely Duration of the Litigation
               Justifies the Settlement .............................................................13

     D.   Lead Plaintiff Had Sufficient Information to Determine the Propriety of
          Settlement ............................................................................................14

     E.   The Risk that Class Certification Might Not Be Granted, or, Even if
          Granted, that Certification Could Not Be Maintained Through Trial ..................15

     F.   The Recommendations of Experienced Counsel After Extensive Litigation
          and Arm's-Length Settlement Negotiations Favor the Approval of the
          Settlement ............................................................................................16

     G.   Reaction of the Class Supports Approval of the Settlement.....................16

V.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE....................17

VI.  CONCLUSION...................................................................................18

1

**TABLE OF AUTHORITIES**

2
                                                                                **Page**

3    **CASES**

4    *Beecher v. Able,*
5        575 F.2d 1010 (2d Cir. 1978)............................................................17

6    *Brotherton v. Cleveland,*
         141 F. Supp. 2d 894 (S.D. Ohio 2001) ...........................................17
7
     *Bryant v. Avado Brands, Inc.,*
8        100 F. Supp. 2d 1368 (M.D. Ga. 2000), *rev'd on*
         *other grounds and remanded sub nom. Bryant v. Dupree,*
9        252 F.3d 1161 (11th Cir. 2001) .....................................................11

10   *Carson v. Am. Brands, Inc.,*
         450 U.S. 79 (1981)............................................................................7
11
     *Churchill Vill., L.L.C. v. GE,*
12       361 F.3d 566 (9th Cir. 2004) ...........................................................6

13   *Class Plaintiffs v. Seattle,*
14       955 F.2d 1268 (9th Cir. 1992) .......................................................17

15   *Ellis v. Naval Air Rework Facility,*
16       87 F.R.D. 15 (N.D. Cal. 1980)..........................................................8

17   *Girsh v. Jepson,*
         521 F.2d 153 (3d Cir. 1975)............................................................10
18
     *Glickenhaus & Co. v. Household Int'l, Inc.,*
19       787 F.3d 408 (7th Cir. 2015) .........................................................14

20   *Hanlon v. Chrysler Corp.,*
21       150 F.3d 1011 (9th Cir. 1998) ...................................................7, 17

22   *Harris v. Vector Mktg. Corp.,*
         No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878
23       (N.D. Cal. Apr. 29, 2011) .................................................................9

24   *In re Apollo Grp., Inc. Sec. Litig.,*
         No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995
25       (D. Ariz. Aug. 4, 2005), *rev'd and remanded on other grounds,*
26       2010 U.S. App. LEXIS 14478 (9th Cir. 2010) ...............................14

27

28

1331075_1

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL
OF PLAN OF ALLOCATION AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH      - ii -

1

2                                                                                    **Page**

3

4   *In re BankAtlantic Bancorp, Sec. Litig.*,
      No. 07-61542-CIV-UNGARO, 2011 U.S. Dist. LEXIS 48057
5     (S.D. Fla. Apr. 25, 2011), *aff'd sub nom. Hubbard v. BankAtlantic
      Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012)...................................................10, 14

6
    *In re Chicken Antitrust Litig. Am. Poultry*,
7     669 F.2d 228 (5th Cir. 1982) ................................................................17

8   *In re Delphi Corp. Sec.*,
      248 F.R.D. 483 (E.D. Mich. 2008) ........................................................2
9
    *In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
10    142 F.R.D. 588 (S.D.N.Y. 1992) ...........................................................18

11
    *In re Heritage Bond Litig.*,
12    No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555
      (C.D. Cal. June 10, 2005) .......................................................................18
13
    *In re Ikon Office Sols., Inc., Sec. Litig.*,
14    194 F.R.D. 166 (E.D. Pa. 2000).............................................11, 13, 14, 17

15
    *In re Immune Response Sec. Litig.*,
16    497 F. Supp. 2d 1166 (S.D. Cal. 2007)..................................................15

17  *In re Mego Fin. Corp. Sec. Litig.*,
      213 F.3d 454 (9th Cir. 2000) .....................................................10, 13, 14
18
    *In re Mfrs. Life Ins. Co. Premium Litig.*,
19    No. MDL 1109, 1998 U.S. Dist. LEXIS 23217
      (S.D. Cal. Dec. 21, 1998).......................................................................13
20
    *In re Omnivision Techs.*,
21    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ........................................6, 16, 18

22  *In re Oracle Corp. Sec. Litig.*,
      No. C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995
23    (N.D. Cal. June 16, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010).............13

24  *In re Pac. Enters. Sec. Litig.*,
      47 F.3d 373 (9th Cir. 1995) .....................................................................6
25
    *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
26    460 F.3d 1217 (9th Cir. 2006) .................................................................6

27

28

1

2                                                                                                        **Page**

3

4      *In re Telik, Inc. Sec. Litig.*,
          576 F. Supp. 2d 570 (S.D.N.Y. 2008)...................................................................12

5      *In re Tyco Int'l, Ltd.*,
6          535 F. Supp. 2d 249 (D.N.H. 2007)....................................................................12

7      *In re Veeco Instruments Sec. Litig.*,
          No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629
8          (S.D.N.Y. Nov. 7, 2007) ....................................................................................10

9      *In re Warner Commc'ns Sec. Litig.*,
          618 F. Supp. 735 (S.D.N.Y. 1985),
10         *aff'd*, 798 F.2d 35 (2d Cir. 1986) ......................................................................10

11     *In re Wells Fargo Loan Processor Overtime Pay Litig.*,
          No. MDL C-07-1841 (EMC), 2011 U.S. Dist. LEXIS 84541
12         (N.D. Cal. Aug. 2, 2011).......................................................................................7

13     *Johansson-Dohrmann v. CBR Sys.*,
14         No. 12-cv-1115-MMA (BGS), 2013 U.S. Dist. LEXIS 103863
          (S.D. Cal. July 24, 2013)....................................................................................10

15     *Lewis v. Newman*,
16         59 F.R.D. 525 (S.D.N.Y. 1973) ..........................................................................10

17     *Linney v. Cellular Alaska P'ship*,
18         No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300
          (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ...............................8

19     *Marshall v. Holiday Magic, Inc.*,
20         550 F.2d 1173 (9th Cir. 1977) ..............................................................................6

21     *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*,
22         797 F.2d 799 (9th Cir. 1986) ................................................................................6

23     *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
          221 F.R.D. 523 (C.D. Cal. 2004)................................................................7, 10, 16
24
       *Officers for Justice v. Civil Serv. Comm'n*,
25         688 F.2d 615 (9th Cir. 1982) ...................................................................... *passim*

26     *Republic Nat'l Life Ins. Co. v. Beasley*,
27         73 F.R.D. 658 (S.D.N.Y. 1977)..........................................................................10

28

1

2                                                                                                    **Page**

3

4  *Reynolds v. Beneficial Nat'l Bank,*
      288 F.3d 277 (7th Cir. 2002) ................................................................14

5  *Robbins v. Koger Props.,*
6     116 F.3d 1441 (11th Cir. 1997) ...........................................................10

7  *Rodriguez v. W. Publ'g Corp.,*
      563 F.3d 948 (9th Cir. 2009) ...........................................................8, 16

8  *Satchell v. Fed. Express Corp.,*
9     No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066
      (N.D. Cal. Apr. 13, 2007) .....................................................................9
10

11 *Smith v. Dominion Bridge Corp.,*
      No. 96-7580, 2007 U.S. Dist. LEXIS 26903
12    (E.D. Pa. Apr. 11, 2007) .....................................................................12

13 *Thacker v. Chesapeake Appalachia, L.L.C.,*
      695 F. Supp. 2d 521 (E.D. Ky. 2010), *aff'd sub nom.*
14    *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.,*
      636 F.3d 235 (6th Cir. 2011) ...............................................................17
15

16 *Torrisi v. Tucson Elec. Power Co.,*
      8 F.3d 1370 (9th Cir. 1993) ..................................................................7

17
18 *Util. Reform Project v. Bonneville Power Admin.,*
      869 F.2d 437 (9th Cir. 1989) ................................................................6

19 *Van Bronkhorst v. Safeco Corp.,*
20    529 F.2d 943 (9th Cir. 1976) ................................................................6

21 *White v. NFL,*
      822 F. Supp. 1389 (D. Minn. 1993) ......................................................18

22 *Williams v. First Nat'l Bank,*
23    216 U.S. 582 (1910) ..............................................................................6

24 **STATUTES, RULES AND REGULATIONS**

25 15 U.S.C.
      §78j(b) ...................................................................................................4
26    §78t(a) ...................................................................................................4
      §78u-4(b)(3)(B) ......................................................................................5
27

28

**Page**

Federal Rules of Civil Procedure
Rule 1 ........................................................................................................................6
Rule 23 .....................................................................................................................17
Rule 23(a) ................................................................................................................15
Rule 23(b)(3) ...........................................................................................................15
Rule 23(c)(1) ...........................................................................................................15
Rule 23(e) ...............................................................................................................1, 6

17 C.F.R.
§240.10b-5 ................................................................................................................4

**SECONDARY AUTHORITY**

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons,
*Securities Class Action Settlements – 2016 Review and Analysis*
(Cornerstone Research 2017) .......................................................................................9

TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on January 31, 2018, at 9:00 a.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Phyllis J. Hamilton, Chief District Judge, at the United States District Court for the Northern District of California, Oakland Division, 1301 Clay Street, Oakland, California 94612, Lead Plaintiff Delaware County Employees Retirement System ("Lead Plaintiff" or "Delaware County") will respectfully move, pursuant to Federal Rule of Civil Procedure 23(e), for entry of the [Proposed] Final Judgment and Order of Dismissal with Prejudice and the [Proposed] Order Approving Plan of Allocation. Lead Plaintiff's motion is based on the following Memorandum in support thereof; the Declaration of Douglas R. Britton in Support of (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation, and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4) ("Britton Decl."); the Declaration of Edward E. O'Lone in Support of Motion for Final Approval of Class Action Settlement and Application for an Award of Attorneys' Fees and Expenses and Lead Plaintiff's Expenses Pursuant to 15 U.S.C. §78u-4(a)(4); the Declaration of Carole K. Sylvester Regarding Notice Dissemination, Publication, Requests for Exclusion Received to Date, Interim Claims Processing, and Estimate of Administration Fees and Expenses ("Sylvester Decl."); the Stipulation of Settlement, dated as of August 30, 2017 (ECF No. 143) ("Stipulation" or "Settlement"); all other pleadings and matters of record; and such additional evidence and testimony as may be presented before or at the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     PRELIMINARY STATEMENT

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff submits this memorandum in support of its motion for final approval of the Settlement of this action for $19,000,000 in cash (plus interest) and for approval of the Plan of Allocation. The terms of the Settlement are set forth in the Stipulation, which was preliminarily approved by the Court on October 11, 2017.[1]   ECF No. 147.  The Settlement is the result of hard-fought litigation and

---

[1]   All capitalized terms not defined herein shall have the same meanings set forth in the Stipulation.

1331075_1

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH     - 1 -

1   settlement negotiations with the substantial assistance of the Honorable Layn R. Phillips (Ret.), a

2   highly respected and experienced mediator.[2]   Lead Plaintiff and its counsel believe that the

3   Settlement represents a highly favorable resolution of this complex litigation that fully takes into

4   account the specific risks of this case.  Britton Decl., ¶¶6, 88, 97, 102.

5           This case has been zealously prosecuted by Lead Counsel from its commencement in

6   April 2014 through settlement against determined opposition.  From the outset, Defendants asserted

7   strong defenses, adamantly denied liability and were firm in their belief that Lead Plaintiff could not

8   prevail on the claims asserted.  As set forth in more detail in the Britton Declaration, the Settlement

9   was achieved only after Lead Counsel, *inter alia*: (a) conducted a thorough pre-filing investigation,

10  including, through its investigators, conducting numerous investigative witness interviews of former

11  employees of Imperva, Inc. ("Imperva"); (b) successfully overcame, in part, Defendants' repeated,

12  comprehensive motions to dismiss Lead Plaintiff's claims; (c) successfully challenged certain of

13  Defendants' defenses set forth in their Answer and Amended Answer; (d) propounded extensive

14  discovery upon Defendants and non-parties concerning the allegations upheld by the Court,

15  including requests for the production of documents, interrogatories and non-party subpoenas;

16  (e) followed up on that discovery through numerous meet-and-confers and a motion to compel the

17  production of documents; (f) reviewed and analyzed over half a million pages of documents

18  produced by Defendants and multiple non-parties; (g) fully briefed and argued Lead Plaintiff's

19  motion for class certification; (h) took or defended seven depositions, including two Rule 30(b)(6)

20  depositions of Defendant Imperva (3 witnesses); (i) retained and consulted with experts regarding

21  materiality, loss causation, market efficiency, damages, data security technology, and the customer

22  relationship management system used by Imperva; (j) extensively prepared for and attended an in-

23  person mediation with Judge Phillips; and (k) participated in settlement negotiations after the

24  mediation with the assistance of Judge Phillips.  Britton Decl., ¶¶4, 14-87.

25

26  ─────────────────
    [2]   *See, e.g.*, *In re Delphi Corp. Sec.*, 248 F.R.D. 483, 498 & n.14  (E.D. Mich. 2008) (recognizing
27  "the outstanding work done by Judge Phillips" in settlement negotiations and "the added benefit of
    the insight and considerable talents of [this] former federal judge who is one of the most prominent
28  and highly skilled mediators of complex actions").

1331075_1

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL
OF PLAN OF ALLOCATION AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH          - 2 -

1    Lead Plaintiff and its counsel believe that the $19 million Settlement represents a highly

2    favorable result for the Class and fully takes into consideration the procedural posture of the case and

3    risks of continued litigation.  This conclusion is based on all the circumstances present here, including

4    the substantial risks, expense, and uncertainties in continuing the action through completion of

5    discovery, summary judgment motion(s), trial, and probable appeal; the relative strengths and

6    weaknesses of the claims and defenses asserted; a complete analysis of the evidence obtained and the

7    legal and factual issues presented; past experience in litigating securities class actions similar to the

8    present action; and the serious disputes between the parties concerning the merits and damages and

9    the Class' ability to collect on any judgment obtained after trial and the exhaustion of appeals.  If not

10   for this Settlement, the case would have continued to be fiercely contested with the ultimate outcome

11   uncertain.  Defendants demonstrated a commitment to defend this case and are represented by well-

12   respected and highly capable counsel from Fenwick & West LLP.

13   While the deadline for filing objections, January 3, 2018, has not yet passed, Class Members

14   appear to agree with Lead Counsel's conclusion.  Pursuant to the Court's Order Preliminarily

15   Approving Settlement and Providing for Notice (ECF No. 147) ("Notice Order"), to date, over

16   13,000 copies of the Notice of Pendency and Proposed Settlement of Class Action ("Notice") and

17   Proof of Claim and Release ("Proof of Claim" and, together with the Notice, the "Notice Package")

18   have been sent to potential Class Members and nominees.  *See* Sylvester Decl., ¶11.  A Summary

19   Notice was also published in *The Wall Street Journal* and transmitted over the *Business Wire* on

20   November 6, 2017.  *Id.*, ¶15.  Copies of the Stipulation, Notice Package, and Notice Order were also

21   placed on a case specific settlement website identified in the Notice on October 23, 2017.  *Id.*, ¶14.

22   The Notice informed potential Class Members of the terms of the Settlement, their right to object or

23   opt-out of the Settlement and the procedure for doing so, the Plan of Allocation, and counsel's

24   request for an award of attorneys' fees and expenses and an award to Lead Plaintiff to reimburse it

25   for the time that it devoted to the action.  To date, not a single Class Member has filed an objection

26

27

28

1   to any aspect of the Settlement, Plan of Allocation, counsel's request for an award of attorneys' fees

2   and expenses or Lead Plaintiff's request for reimbursement.[3]

3        For all of the reasons discussed herein and in the Britton Declaration, it is respectfully

4   submitted that the Settlement is fair, adequate and reasonable and therefore should be finally

5   approved by the Court.  Moreover, the Plan of Allocation was developed in consultation with Lead

6   Plaintiff's economic expert, reflects an assessment of the damages that may have been recovered had

7   liability been successfully established at trial, and is tailored to account for the specific litigation

8   risks during various times during the Class Period.  As a result, the Plan of Allocation provides a fair

9   and reasonable basis for allocating the Net Settlement Fund among Authorized Claimants, and

10  therefore should be approved.

11  **II.    LITIGATION HISTORY**

12       The following is a brief history of the Litigation.[4]  The initial complaint was filed on

13  April 11, 2014, in the United States District Court for the Northern District of California.  On

14  August 7, 2014, the Court appointed Delaware County as Lead Plaintiff, and Robbins Geller

15  Rudman & Dowd LLP as Lead Counsel.  ECF No. 29.  On October 10, 2014, Lead Plaintiff filed the

16  Amended Complaint for Violation of the Federal Securities Laws, alleging violations of §§10(b) and

17  20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated

18  thereunder, in connection with certain statements concerning, among other things, Imperva's success

19  in competing against IBM.  ECF No. 33.

20       On January 6, 2015, Defendants filed a motion to dismiss the Amended Complaint.  ECF

21  No. 36.  On September 17, 2015, after being fully briefed and argued, the Court granted Defendants'

22  motion to dismiss, with leave to amend.  ECF No. 53.

23       On January 13, 2016, Lead Plaintiff filed the Third Amended Complaint for Violation of the

24  Federal Securities Laws (the "Complaint").  ECF No. 64.  Defendants again moved to dismiss,

25

26  [3]   In accordance with the Notice Order, any objections will be addressed by Lead Counsel on or
    before January 17, 2018.

27  [4]   The Court is respectfully referred to the Britton Declaration for a complete overview of Lead
    Plaintiff's claims, the risks presented by continued litigation, the procedural and factual history of
28  the Litigation, as well as the settlement negotiations.

1   which the Court granted in part and denied in part.  On June 20, 2016, Defendants filed their Answer

2   to the Complaint, denying all claims and asserting certain affirmative defenses.  ECF No. 78.

3        Following the Court's May 16, 2016 Order denying in part and granting in part Defendants'

4   motion to dismiss, which lifted the discovery stay pursuant to 15 U.S.C. §78u-4(b)(3)(B) of the

5   Private Securities Litigation Reform Act of 1995 ("PSLRA"), Lead Plaintiff served Defendants

6   Imperva and Schmid with its First Set of Requests for the Production of Documents on July 18,

7   2016.  Defendants produced responsive documents pursuant to Lead Plaintiff's request on September

8   6, 2016.  Lead Plaintiff also issued subpoenas *duces tecum* to several non-parties, including IBM,

9   investment banks which hosted industry presentations, financial analysts, and Imperva customers

10  and partners, obtaining additional evidence regarding the claims at issue.

11       On July 18, 2016, Lead Plaintiff issued its First Set of Interrogatories to Defendants Imperva

12  and Schmid.   On September 6, 2016, Defendants served their responses and objections which

13  referenced their upcoming document productions.

14       On October 19, 2016, Lead Plaintiff filed its motion for class certification.  ECF No. 98.

15  Lead Plaintiff's motion included the expert report of Bjorn I. Steinholt, CFA, which addressed

16  market efficiency and the event study framework for calculating class-wide damages.  Briefing on

17  Lead Plaintiff's motion was stayed to allow for the February 16, 2017 mediation with Judge Phillips.

18  When that mediation proved unsuccessful, briefing was resumed on April 3, 2017, with the filing of

19  Defendants' opposition.  ECF No. 109.  After briefing was completed, the Court heard oral argument

20  on May 24, 2017.

21       On July 5, 2017, the parties reached an agreement-in-principle to settle the case as Lead

22  Plaintiff's class certification motion remained under submission.  Subsequently, Lead Plaintiff and

23  the Defendants continued negotiations resulting in the terms and conditions set forth in the

24  Stipulation.  ECF No. 143.  A preliminary approval hearing was held on October 11, 2017, after

25  which the Court entered the Notice Order.  ECF No. 147.

26       The Notice Order (at ¶7), among other things, appointed Gilardi & Co. LLC as the Claims

27  Administrator "to supervise and administer the notice procedure as well as the processing of

28  claims . . . ."  As set forth in the Notice, the "costs of class notice and administration" are deducted

1331075_1

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL
OF PLAN OF ALLOCATION AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH      - 5 -

from the Settlement Fund.  Sylvester Decl., Ex. A (Notice) at 2.  To date, the Claims Administrator has invoiced and been paid from the Settlement Fund $59,664.65 and in addition has incurred $42,794.18 in as-yet unbilled fees and expenses.  *Id.*, ¶19.  The Claims Administrator currently estimates that the total fees and expenses to administer the Settlement, including the amounts above paid and as-yet unbilled, through the initial distribution will be approximately $250,000.  *Id.*

## III.   THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

It is well-established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits.").  Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  It is beyond question that "the public has an overriding interest in securing 'the just, speedy, and inexpensive determination of every action.'"  *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006);[5] Fed. R. Civ. P. 1.  This is particularly true in class action suits. *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).[6]  In deciding whether to approve a proposed settlement of a securities class action under Rule 23(e), the court must first find that the proposed settlement is "'fair, adequate, and reasonable.'"[7]  The Ninth Circuit has provided factors which may be considered in evaluating the fairness of a class action settlement:

> Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable. . . .  The district court's ultimate determination will necessarily involve a balancing of several factors which may

---

[5]   Citations are omitted throughout unless otherwise indicated.

[6]   The law consistently favors the compromise of disputed class action claims.  *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986).

[7]   *Pac. Enters.*, 47 F.3d at 377; *Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

1331075_1

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH     - 6 -

include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625; *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).  "The relative degree of importance to be attached to any particular factor will depend upon . . . the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case."  *Officers for Justice*, 688 F.2d at 625.

Courts have consistently held that the function of a judge in reviewing a settlement is not to rewrite the settlement agreement reached by the parties or to try the case by resolving issues intentionally left unresolved.  *See, e.g.*, *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) ("Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement."). Therefore, courts have taken a liberal approach toward approval of class action settlements, recognizing that the settlement process involves the exercise of judgment and that the concept of "reasonableness" can encompass a broad range of results.  "'In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'"  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).  "As the Ninth Circuit has noted, 'Settlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate, and free from collusion.'"  *In re Wells Fargo Loan Processor Overtime Pay Litig.*, No. MDL C-07-1841 (EMC), 2011 U.S. Dist. LEXIS 84541, at *11 (N.D. Cal. Aug. 2, 2011) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026-27 (9th Cir. 1998)).

When examined under the applicable criteria, this Settlement is a highly favorable result for the Class.  Lead Counsel believes that there are serious questions as to whether a more favorable monetary result could be attained after summary judgment, trial, and the inevitable post-trial motions and appeals.  *See* Britton Decl., ¶¶95-97.  The Settlement achieves a substantial and certain recovery for the Class and is superior to the possibility that were the Litigation to proceed to trial, there could

1331075_1

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH      - 7 -

1   be no recovery at all.  As discussed below, an analysis of the relevant factors demonstrates that the

2   Settlement merits this Court's final approval.

3   **IV.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
           ADEQUATE**

4

5           **A.    The Settlement Enjoys a Presumption of Reasonableness Because It Is
                    the Product of Arm's-Length Settlement Negotiations**

6           The Settlement, which was extensively negotiated between the parties with the substantial

7   assistance of Judge Phillips, provides a substantial and certain cash benefit to the Class in the amount

8   of $19 million.  The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-

9   collusive, negotiated resolution" in approving a class action settlement.  *Rodriguez v. W. Publ'g*

10  *Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  Here, the Settlement enjoys a presumption of fairness

11  because it is the product of extensive arm's-length negotiations conducted by experienced and

12  capable counsel with a firm understanding of the strengths and weaknesses of their respective

13  client's positions.[8]

14          The settlement negotiations were at all times hard-fought and at arm's length.  During these

15  negotiations, Lead Counsel zealously advanced Lead Plaintiff's positions and was fully prepared to

16  continue to litigate rather than accept a settlement that was not in the best interest of the Class.  The

17  parties participated in a formal mediation session with Judge Phillips on February 16, 2017, that

18  involved an extensive analysis of the Class' claims and the defenses that would be asserted by

19  Defendants.  Britton Decl., ¶¶38, 98.  Prior to the mediation, both sides submitted comprehensive

20  mediation statements that identified and analyzed key documents, which were provided to Judge

21  Phillips and exchanged among the parties.  *Id.*, ¶38.  However, the parties did not reach an

22  agreement to settle at the mediation despite their diligent and good faith efforts.  *Id.*  It was only after

23  continued settlement negotiations among the parties, with the assistance of Judge Phillips, that the

24  parties reached an agreement-in-principle to settle the Litigation.  *Id.*, ¶98.  Courts have recognized

25

26  ---
    [8]    *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 U.S. Dist. LEXIS 24300, at *16

27  (N.D. Cal. July 18, 1997) ("the fact that the settlement agreement was reached in arm's length
    negotiations, after relevant discovery ha[s] taken place create[s] a presumption that the agreement is
    fair"), *aff'd*, 151 F.3d 1234 (9th Cir. 1998); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18

28  (N.D. Cal. 1980).

1331075_1

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL
OF PLAN OF ALLOCATION AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH      - 8 -

1    that "[t]he assistance of an experienced mediator in the settlement process confirms that the

2    settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 U.S. Dist.

3    LEXIS 99066, at *17 (N.D. Cal. Apr. 13, 2007); *see also Harris v. Vector Mktg. Corp.*, No. C-08-

4    5198 EMC, 2011 U.S. Dist. LEXIS 48878, at *25-*26 (N.D. Cal. Apr. 29, 2011).

5         The agreement-in-principle was followed by extensive negotiations regarding the detailed

6    terms of the Settlement, including the scope of the releases, the timing of the funding of the

7    Settlement, and the form and content of the Notice to be sent to the Class.  These facts establish that

8    the Settlement is the result of hard fought arm's-length negotiations and "not the product of fraud or

9    overreaching by, or collusion between, the negotiating parties." *Officers for Justice*, 688 F.2d at

10   625.

11        **B.      The Settlement Amount Strongly Supports Approval**

12        The Settlement is certainly a good result for the Class.  In fact, based on a comprehensive

13   event study, Lead Plaintiff estimates that the maximum potential judgment it could obtain for the

14   Class is $228 million for Lead Plaintiff's claims.  *See* Britton Decl., ¶110 n.5.  The $19 million

15   Settlement represents approximately 8.3% of the maximum potential damages caused by the alleged

16   misrepresentations.[9]  *Id.*  This is well above the median percentage of 2.5% for securities class action

17   settlements in 2016.  Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action*

18   *Settlements – 2016 Review and Analysis*, at 7, Figure 6 (Cornerstone Research 2017).

19        This Settlement also represents a highly favorable recovery in light of the fact that even if

20   Lead Plaintiff successfully advanced the remaining claims to trial, the reaction of a jury to such

21   complex expert testimony is highly unpredictable, and Lead Counsel recognizes the possibility that a

22   jury could be swayed by convincing experts for the Defendants, and find there were no damages or

23

---

24   [9]    The total recovery rate would increase to nearly 12% had the Court accepted Defendants'
     argument opposing Lead Plaintiff's motion for class certification that "the earliest potential date to

25   consider for commencing any class period is November 20, 2013, when the next alleged
     misstatement was made orally by Mr. Schmid at another investor conference" since "under

26   *Halliburton II*, the win rate statement made on May 21 (as well as those made on December 10,
     2013 and March 5, 2014) had no price impact, and therefore is not subject to class treatment." ECF

27   No. 109 at 2.

28

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL
OF PLAN OF ALLOCATION AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH       - 9 -

1   only a fraction of the amount of damages asserted by Lead Plaintiff.  *See, e.g.*, *In re Warner*

2   *Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) (approving settlement where "it is

3   virtually impossible to predict with any certainty which testimony would be credited, and ultimately,

4   which damages would be found to have been caused by actionable, rather than the myriad

5   nonactionable factors such as general market conditions"), *aff'd*, 798 F.2d 35 (2d Cir. 1986).  *See*

6   *In re Veeco Instruments Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85629, at *30

7   (S.D.N.Y. Nov. 7, 2007) ("The jury's verdict with respect to damages would depend on its reaction

8   to the complex testimony of experts, a reaction which at best is uncertain.").[10]

9       **C.    The Strength of Lead Plaintiff's Case When Balanced Against the**
            **Risk, Expense, Complexity, and Likely Duration of Further Litigation**
10          **Supports Approval of the Settlement**

11          In determining whether the Settlement is fair, reasonable, and adequate, the Court should

12  balance against the continuing risks of litigation, the benefits afforded to the Class, and the

13  immediacy and certainty of a substantial recovery.  *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir.

14  1975); *Johansson-Dohrmann v. CBR Sys.*, No. 12-cv-1115-MMA (BGS), 2013 U.S. Dist. LEXIS

15  103863, at *11-*12 (S.D. Cal. July 24, 2013) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454,

16  458 (9th Cir. 2000)).  In other words,

17          "[t]he Court shall consider the vagaries of litigation and compare the significance of
            immediate recovery by way of the compromise to the mere possibility of relief in the
18          future, after protracted and expensive litigation.  In this respect, 'It has been held
            proper to take the bird in hand instead of a prospective flock in the bush.'"
19
    *Nat'l Rural*, 221 F.R.D. at 526.
20
            In the context of approving class action settlements, courts attempting to balance these
21
    factors have recognized "that stockholder litigation is notably difficult and notoriously uncertain."
22
    *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973); *see also Republic Nat'l Life Ins. Co. v.*
23
    *Beasley*, 73 F.R.D. 658, 667 (S.D.N.Y. 1977).  This is even more so today in this post-PSLRA
24
    environment amid defendants' constant attempts to push the envelope and contours of the PSLRA.
25

---

26  [10]    *See also In re BankAtlantic Bancorp, Sec. Litig.*, No. 07-61542-CIV-UNGARO, 2011 U.S. Dist.
    LEXIS 48057 (S.D. Fla. Apr. 25, 2011) (court granted defendants' judgment as a matter of law on
27  the basis of loss causation, overturning jury verdict and award in plaintiff's favor); *aff'd sub nom.*
    *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *Robbins v. Koger Props.*,
28  116 F.3d 1441 (11th Cir. 1997) (finding no loss causation and overturning $81 million jury verdict).

1331075_1

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL
OF PLAN OF ALLOCATION AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH        - 10 -

1  *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions

2  have become more difficult from a plaintiff's perspective in the wake of the PSLRA"). As one court

3  noted: "An unfortunate byproduct of the PSLRA is that potentially meritorious suits will be short-

4  circuited by the heightened pleading standard." *Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368,

5  1377 (M.D. Ga. 2000), *rev'd on other grounds and remanded sub nom. Bryant v. Dupree*, 252 F.3d

6  1161 (11th Cir. 2001).

7        While Lead Plaintiff and its counsel believe that the claims have merit, they recognize that

8  Lead Plaintiff faced numerous risks and uncertainties and were well aware that many other similar

9  actions lose on dispositive motions, at trial, or on appeal. The Settlement recognizes the risks of

10  complex litigation involving difficult legal and factual issues. As discussed herein and in the Britton

11  Declaration, the risks of continued litigation when weighed against the substantial and certain

12  recovery for the Class confirms the reasonableness of the Settlement.

13                    **1.        The Risks of Proving Liability**

14        Lead Plaintiff believes that based on the evidence adduced to date, including interviews with

15  former Imperva employees and the review of over half a million pages of documents produced by

16  Defendants and several non-parties, it had a good case as to liability and would be able to prove that

17  Defendants misrepresented the state of Imperva's business, including its head-to-head competition

18  with IBM, which Lead Plaintiff alleged caused the price of Imperva common stock to be artificially

19  inflated.

20        Nevertheless, Lead Plaintiff faced significant risks on novel and difficult factual and legal

21  questions from the outset of the case. In fact, the Court substantially narrowed the case based on

22  unique factual and legal questions presented by Defendants in two separate motions to dismiss,

23  which amplified the risks as the case moved into discovery and ultimately into summary judgment.

24  Indeed, the remaining statements hinged on whether Imperva beat IBM "4 out of 5 times" in head-

25  to-head competition. How a jury (or the Court at summary judgment) would respond to evidence

26  about the size and relative value of the deals and whether a particular deal truly involved head-to-

27  head competition was uncertain and presented a substantial risk that the case could either be

28  dismissed at summary judgment or lost entirely at trial.

1331075_1

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL
OF PLAN OF ALLOCATION AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH         - 11 -

1   Another difficult issue going forward would be Lead Plaintiff's ability to prove scienter, *i.e.*,

2   that Defendants acted with knowledge of or with recklessness as to the alleged falsity of their

3   statements and omissions.  A defendant's state of mind in a securities case is often the most difficult

4   element of proof and one which is rarely supported by direct evidence such as an admission.  *See In*

5   *re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579 (S.D.N.Y. 2008); *see also Smith v. Dominion*

6   *Bridge Corp.*, No. 96-7580, 2007 U.S. Dist. LEXIS 26903, at *17 (E.D. Pa. Apr. 11, 2007) ("Since

7   stockholders normally have 'little more than circumstantial and accretive evidence to establish the

8   requisite scienter,' proving scienter is an 'uncertain and difficult necessity for plaintiffs.'").  Thus, it

9   was quite possible that Lead Plaintiff would procure documentary and testimonial evidence from all

10  Defendants and others with knowledge about the relevant facts, yet not be able to adduce sufficient

11  evidence to satisfy its burden of proof on this issue at trial.

12   While Lead Plaintiff aggressively pursued discovery and believes that it would present

13  sufficient evidence to support its claims, there was no assurance that Lead Plaintiff would survive

14  Defendants' summary judgment motion.  Even assuming Lead Plaintiff survived the motion(s) for

15  summary judgment, presenting these complex issues to a jury posed significant risks.  Lead Plaintiff

16  understood that Defendants would present counter-evidence supporting their position that their

17  statements regarding IBM were not false or misleading and were not made with the requisite

18  scienter.  Lead Plaintiff could not be certain that a jury would see through the complexity of the

19  underlying facts to the heart of the alleged fraud.  Moreover, the risks of establishing liability posed

20  by complex issues with conflicting testimony, including from experts, and other evidence would be

21  exacerbated by the risks inherent in all shareholder litigation, including the unpredictability of a

22  lengthy and complex jury trial, the risk that witnesses could be unavailable or jurors could react to

23  the evidence in unforeseen ways, the risk that a jury would find that some or all of the alleged

24  misrepresentations were not material, and the risk that the jury could find that Defendants believed

25  in the appropriateness of their actions at the time.

26          **2.      The Risks of Proving Loss Causation and Damages**

27   Even if Lead Plaintiff was successful in establishing liability on the alleged

28  misrepresentations, it faced substantial risks in proving loss causation and damages.  *See In re Tyco*

1  *Int'l, Ltd.*, 535 F. Supp. 2d 249, 260-61 (D.N.H. 2007) ("Proving loss causation [is] complex and

2  difficult.  Moreover, even if the jury agreed to impose liability, the trial would likely involve a

3  confusing 'battle of the experts' over damages.").  *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, No. C 01-

4  00988 SI, 2009 U.S. Dist. LEXIS 50995, at *40-*49 (N.D. Cal. June 16, 2009) (granting defendants'

5  motion for summary judgment for failure to demonstrate a fact on the element of loss causation),

6  *aff'd*, 627 F.3d 376 (9th Cir. 2010).

7  Given that the Court dismissed Imperva's guidance for 1Q14 from the case, Defendants

8  argued there was no loss causation.  In response, Lead Plaintiff argued that the reason for the

9  earnings miss related to Imperva's competition with IBM and therefore loss causation could be

10  satisfied.  There was certainly no assurance that a jury would decide these issues in Lead Plaintiff's

11  favor.

12  After careful consideration of all of these risks, the Settlement is in the best interests of the

13  Class.  Although Lead Counsel believes that the case is meritorious, its experience has taught it that

14  such risks can render the outcome of a trial extremely uncertain.  *See In re Mfrs. Life Ins. Co.*

15  *Premium Litig.*, No. MDL 1109, 1998 U.S. Dist. LEXIS 23217, at *17 (S.D. Cal. Dec. 21, 1998)

16  ("even if it is assumed that a successful outcome for plaintiffs at summary judgment or at trial would

17  yield a greater recovery than the Settlement – which is not at all apparent – there is easily enough

18  uncertainty in the mix to support settling the dispute rather than risking no recovery in future

19  proceedings").

20        **3.      The Complexity, Expense, and Likely Duration of the**
              **Litigation Justifies the Settlement**

21  The immediacy and certainty of a recovery is another factor for the Court to balance in

22  determining whether the Settlement is fair, adequate, and reasonable.  *See Mego Fin.*, 213 F.3d at

23  459; *Officers for Justice*, 688 F.2d at 626.

24  As noted above, Defendants have demonstrated a commitment to vigorously defend this case

25  and are represented by well-respected and highly capable counsel from Fenwick & West LLP.  If not

26  for this Settlement, the expense and time of continued litigation would have been substantial.  As the

27  court recognized in *Ikon*:

28

1331075_1

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL
OF PLAN OF ALLOCATION AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH        - 13 -

> In the absence of a settlement, this matter will likely extend for . . . years longer with significant financial expenditures by both defendants and plaintiffs. This is partly due to the inherently complicated nature of large class actions alleging securities fraud: there are literally thousands of shareholders, and any trial on these claims would rely heavily on the development of a paper trial [sic] through numerous public and private documents.

194 F.R.D. at 179.

As the securities claims advanced by Lead Plaintiff involve complex legal and factual issues, additional document discovery and depositions, and extensive additional expert discovery and testimony would be necessary. After completion of discovery, Defendants' motion(s) for summary judgment would have to be briefed and argued, and the case would have to be prepared for trial. The trial itself would have been long, expensive, and uncertain and no matter the outcome, appeals would be virtually assured. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015); *In re Apollo Grp., Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT (LEAD), 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2005), *rev'd and remanded on other grounds*, 2010 U.S. App. LEXIS 14478 (9th Cir. 2010); *BankAtlantic*, 2011 U.S. Dist. LEXIS 48057. This would add considerably to the expense and duration of the action.

There exists no doubt that the Settlement will spare the litigants the significant delay, risk, and expense of continued litigation. The appellate process could deny the Class any recovery for years, which would further reduce its value. The $19,000,000 Settlement Amount, at this juncture, is in an immediate and substantial cash recovery, without these considerable risks. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now.").

### D.     Lead Plaintiff Had Sufficient Information to Determine the Propriety of Settlement

While the Settlement comes before the end of the discovery process and dispositive proceedings, both the knowledge of Lead Counsel and the proceedings themselves have reached a stage where an intelligent evaluation of the strengths and weaknesses of Lead Plaintiff's case and the propriety of settlement could be made. *See Officers for Justice*, 688 F.2d at 625; *Mego Fin.*, 213 F.3d at 458. As discussed above and in the Britton Declaration, Lead Counsel conducted an extensive investigation of the facts alleged; interviewed (with the assistance of private investigators)

1331075_1

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH          - 14 -

numerous witnesses, including former Imperva employees; consulted with and engaged experts on a number of issues, including materiality, loss causation, market efficiency, and damages; fully briefed Defendants' two motions to dismiss; and fully briefed and argued Lead Plaintiff's motion for class certification.   Britton Decl., ¶¶4, 19-24, 28-30, 70-87.   In addition, Lead Plaintiff demanded, obtained, and reviewed over half a million pages of documents from Defendants and non-parties and took or defended seven depositions. *Id.*, ¶¶51, 56, 62-64.   The parties also participated in extensive negotiations, including an all-day mediation session where the parties' claims and defenses were fully vetted. *Id.*, ¶38.   Prior to the mediation, the parties submitted to Judge Phillips and exchanged detailed mediation statements which further highlighted the factual and legal issues in dispute. *Id.* As a result, Lead Counsel was able to assess the strengths and weaknesses of the claims asserted and resolve the Litigation on a highly favorable basis for the Class.

### E. The Risk that Class Certification Might Not Be Granted, or, Even if Granted, that Certification Could Not Be Maintained Through Trial

At the time the parties reached a settlement in principle, Lead Plaintiff's motion for class certification was fully briefed and argued and remained under submission.   While Lead Plaintiff argued that the requirements of Rules 23(a) and (b)(3) were satisfied, and submitted an expert report in support thereof, Lead Plaintiff faced the risk that class certification might not be granted had litigation continued.   Defendants aggressively asserted in opposition to class certification, *inter alia*, that because there purportedly was neither front-end nor back-end price impact on Imperva's stock price associated with the alleged misstatements, that there was no presumption of reliance.   Britton Decl., ¶74.   Lead Plaintiff on the other hand argued that Defendants had not successfully rebutted the presumption of reliance because they had not shown that the alleged fraud had no price impact (*id.*, ¶77) and therefore Lead Plaintiff purchased shares at artificially inflated prices resulting from the alleged false statements.   The parties simply did not know how the Court would rule.

Moreover, even if the Court granted class certification, Rule 23(c)(1) provides that a class certification order may be altered or amended at any time before a decision on the merits.   Based on further discovery completed after the Court ruled on certification, Defendants could have moved to decertify the Class or to shorten the Class Period further.   *See, e.g.*, *In re Immune Response Sec.*

1  *Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (finding risk that defendants would attempt to

2  shorten the class period based on evidence produced during discovery supported settlement).

      **F.**      **The Recommendations of Experienced Counsel After Extensive**
3                  **Litigation and Arm's-Length Settlement Negotiations Favor the**
4                  **Approval of the Settlement**

5        As the Ninth Circuit observed in *Rodriquez*, "[t]his circuit has long deferred to the private

6  consensual decision of the parties" and their counsel in settling an action.  563 F.3d at 965.  Courts

7  have recognized that "'"[g]reat weight" is accorded to the recommendation of counsel, who are most

8  closely acquainted with the facts of the underlying litigation.'"  *Nat'l Rural*, 221 F.R.D. at 528.  As

9  courts have recognized, "'[t]he recommendations of plaintiffs' counsel should be given a

10  presumption of reasonableness.'"  *Omnivision*, 559 F. Supp. 2d at 1043.  Lead Counsel, having

11  carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence to support

12  the claims asserted against Defendants, the likelihood of prevailing on these claims, the risk,

13  expense, and duration of continued litigation, and the likely appeals and subsequent proceedings

14  necessary if Lead Plaintiff did prevail against Defendants at trial, has concluded that the Settlement

15  is a highly favorable result for the Class under the circumstances.  Lead Counsel has significant

16  experience in securities and other complex class action litigation and has negotiated numerous other

17  substantial class action settlements throughout the country.  *See* www.rgrdlaw.com.  Here, "[t]here is

18  nothing to counter the presumption that Lead Counsel's recommendation is reasonable."

19  *Omnivision*, 559 F. Supp. 2d at 1043.

20        **G.**      **Reaction of the Class Supports Approval of the Settlement**

21        Pursuant to this Court's Notice Order, the Court-approved Notice and Proof of Claim were

22  mailed to potential Class Members who could be identified with reasonable effort.[11]  In addition, the

23  Summary Notice was published in *The Wall Street Journal* and transmitted over the *Business Wire*

24  on November 6, 2017 (*id.*, ¶15), and the Stipulation, Notice Package, and Notice Order were posted

25  to a website dedicated to the Settlement (www.impervasecuritieslitigation.com), which became

26  operational on October 23, 2017.  *Id.*, ¶14.  The Notice advised the Class of the terms of the

27

28  [11]  *See* Sylvester Decl., ¶¶4-11.

1331075_1

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL
OF PLAN OF ALLOCATION AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH   - 16 -

1  Settlement, the Plan of Allocation, and counsel's request for an award of attorneys' fees and

2  expenses, as well as the procedure and deadline for filing objections and opting out of the Class.  To

3  date, more than 13,000 Notice Packages have been mailed to potential Class Members and

4  nominees.  While the objection deadline – January 3, 2018 – has not yet passed, to date, not a single

5  Class Member has filed an objection to the Settlement, the Plan of Allocation, or counsel's request

6  for an award of attorneys' fees and expenses.[12]

7        While not conclusive, "the fact that the overwhelming majority of the class willingly

8  approved the offer and stayed in the class presents at least some objective positive commentary as to

9  its fairness." *Hanlon*, 150 F.3d at 1027.  Of course, "[t]he fact that some class members object to the

10 Settlement does not by itself prevent the court from approving the agreement." *Brotherton v.*

11 *Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001).  "'A certain number of . . . objections are to

12 be expected in a class action . . . .'"  *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d

13 521, 533 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*,

14 636 F.3d 235 (6th Cir. 2011).

15       Each of the above factors fully supports a finding that the Settlement is fair, reasonable, and

16 adequate, and therefore deserves this Court's final approval.

17 **V.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

18       Lead Plaintiff also seeks approval of the Plan of Allocation.  The Plan of Allocation is set

19 forth in full in the Notice mailed to potential Class Members.

20       Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 is

21 governed by the same standards of review applicable to the settlement as a whole – the plan must be

22 fair and reasonable.  *See Ikon*, 194 F.R.D. at 184; *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284

23 (9th Cir. 1992).  District courts enjoy "broad supervisory powers over the administration of class-

24 action settlements to allocate the proceeds among the claiming class members . . . equitably."

25 *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust Litig. Am.*

26 *Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).  An allocation formula need only have a reasonable,

27

28 ---
[12]   In accordance with the Notice Order, any objections will be addressed by Lead Counsel on or before January 17, 2018.

1331075_1

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL
OF PLAN OF ALLOCATION AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH   - 17 -

1  rational basis, particularly if recommended by "experienced and competent" class counsel. *White v.*

2  *NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142

3  F.R.D. 588, 596 (S.D.N.Y. 1992).

4  The Plan of Allocation here provides an equitable basis to allocate the Net Settlement Fund

5  among all Class Members who submit an acceptable Proof of Claim.  The Plan of Allocation was

6  developed by Lead Counsel with the assistance of its economic expert and reflects an assessment of

7  the damages that could have been recovered at trial under the theories asserted in the case by Lead

8  Plaintiff.[13]  As a result, the Plan of Allocation will result in a fair distribution of the available

9  proceeds among Class Members who submit valid claims and therefore should be approved.

10  **VI.    CONCLUSION**

11  For all the reasons set forth above, in the Britton Declaration, and the entire record, the

12  Settlement and Plan of Allocation warrant this Court's final approval.

13  DATED:  December 20, 2017                    Respectfully submitted,

14                                                            ROBBINS GELLER RUDMAN
                                                                & DOWD LLP
15                                                            THEODORE J. PINTAR
                                                              DOUGLAS R. BRITTON
16                                                            ASHLEY M. PRICE

17

18                                                                    s/ Douglas R. Britton
                                                              DOUGLAS R. BRITTON
19
                                                              655 West Broadway, Suite 1900
20                                                            San Diego, CA  92101-8498
                                                              Telephone:  619/231-1058
21                                                            619/231-7423 (fax)

22

23

24

25  _____
    [13]    *See, e.g.*, *Omnivision*, 559 F. Supp. 2d at 1045 ("It is reasonable to allocate the settlement funds
26  to class members based on the extent of their injuries or the strength of their claims on the merits.");
    *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, at *38 (C.D. Cal.
27  June 10, 2005) (Concluding as fair, a plan of allocation which "'makes interclass distinctions based
    upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the
28  timing of purchases of the securities at issue.'").

1331075_1

NOTICE OF MOT AND MOT FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL
OF PLAN OF ALLOCATION AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH        - 18 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

Lead Counsel for Plaintiff

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 20, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on December 20, 2017.

<u>    s/ Douglas R. Britton    </u>
DOUGLAS R. BRITTON

ROBBINS GELLER RUDMAN
    & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  dougb@rgrdlaw.com

# Mailing Information for a Case 4:14-cv-01680-PJH Shankar v. Imperva, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael Albert**
  malbert@rgrdlaw.com

- **Marie Caroline Bafus**
  mbafus@fenwick.com,pnichols@fenwick.com

- **Matthew James Balotta**
  mbalotta@rgrdlaw.com

- **Jennifer Corinne Bretan**
  jbretan@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com

- **Doug Britton**
  dougb@rgrdlaw.com,kathyj@rgrdlaw.com,e_file_sd@rgrdlaw.com,tjohnson@rgrdlaw.com,ldeem@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Andrew J. Brown**
  andrewb@rgrdlaw.com

- **Frank James Johnson**
  frankj@johnsonfistel.com,michaelf@johnsonfistel.com,ceciliar@johnsonfistel.com,paralegal@johnsonfistel.com

- **Dean S. Kristy**
  dkristy@fenwick.com,kayoung@fenwick.com,lkelleybourne@fenwick.com

- **Felix Shih-Young Lee**
  flee@fenwick.com,tmartin@fenwick.com

- **Tricia Lynn McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com,tjohnson@rgrdlaw.com

- **Susan Samuels Muck**
  smuck@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com,recordsecf@fenwick.com

- **Ivy T Ngo**
  ingo@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Theodore J. Pintar**
  TedP@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Ashley Price**
  aprice@rgrdlaw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,bmurray@glancylaw.com

- **Darren Jay Robbins**
  e_file_sd@rgrdlaw.com

- **Scott H. Saham**
  scotts@rgrdlaw.com

- **Shannon E. Turner**
  sturner@fenwick.com

- **David Conrad Walton**
  davew@rgrdlaw.com

- **Shawn A. Williams**

shawnw@rgrdlaw.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`