ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
        – and –
THEODORE J. PINTAR (131372)
DOUGLAS R. BRITTON (188769)
ASHLEY M. PRICE (281797)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com
dougb@rgrdlaw.com
aprice@rgrdlaw.com

Lead Counsel for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| VISWANATH V. SHANKAR, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> IMPERVA, INC., et al., <br><br> Defendants. | Case No. 4:14-cv-01680-PJH <br><br> <u>CLASS ACTION</u> <br><br> NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §78u-4(a)(4) AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF <br><br> DATE:     January 31, 2018 <br> TIME:     9:00 a.m. <br> CTRM:     3 |

1335972_1

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................................1

II.   AWARD OF ATTORNEYS' FEES ......................................................................5

      A.    A Reasonable Percentage of the Fund Recovered Is the Appropriate
            Method for Awarding Attorneys' Fees in Common Fund Cases ...........................5

      B.    The Benchmark Percentage Fee of 25% Is Reasonable in This Case....................6

            1.    The Result Achieved..............................................................................7

            2.    The Risks of the Litigation and the Novelty and Difficulty of the
                  Questions Presented.............................................................................8

            3.    The Skill Required and the Quality and Efficiency of the Work..............10

            4.    The Contingent Fee Nature of the Case and the Financial Burden
                  Carried by Lead Counsel .....................................................................11

            5.    A 25% Fee Award Is Consistent with the Market Rate in Similar
                  Complex, Contingent Litigation .............................................................13

      C.    Lead Plaintiff's Approval Supports the Requested Fee.......................................15

      D.    Reaction of the Class Supports Approval of the Attorneys' Fees Requested........16

      E.    The Requested Fee Is Reasonable Under a Lodestar Cross-Check Analysis ........17

III.  LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
      NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED .................18

IV.   LEAD PLAINTIFF SHOULD BE AWARDED ITS REASONABLE TIME AND
      EXPENSES UNDER 15 U.S.C. §78u-4(a)(4)..................................................................20

V.    CONCLUSION....................................................................................................21

1335972_1

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES AND AWARD TO
LEAD PLAINTIFF AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH           - i -

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Abrams v. Lightolier Inc.*,
  50 F.3d 1204 (3d Cir. 1995)..............................................................................18

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ...............................................................................2

*Anixter v. Home-Stake Prod. Co.*,
  77 F.3d 1215 (10th Cir. 1996) ...........................................................................13

*Atlas v. Accredited Home Lenders Holding Co.*,
  No. 07-CV-00488-HC (CAB), 2009 U.S. Dist. LEXIS 103035
  (S.D. Cal. Nov. 4, 2009) ....................................................................................20

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988),
  *aff'd*, 899 F.2d 21 (11th Cir. 1990)......................................................................7

*Blum v. Stenson*,
  465 U.S. 886 (1984).................................................................................5, 6, 13

*Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*,
  8 F.3d 722 (10th Cir. 1993) ...............................................................................18

*Brown v. Phillips Petroleum Co.*,
  838 F.2d 451 (10th Cir. 1988) .............................................................................6

*Camden I Condo. Ass'n v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) .............................................................................6

*Cent. R.R. & Banking Co. v. Pettus*,
  113 U.S. 116 (1885)..............................................................................................5

*Churchill Vill., L.L.C. v. GE*,
  361 F.3d 566 (9th Cir. 2004) .............................................................................10

*Clark v. Lomas & Nettleton Fin. Corp.*,
  79 F.R.D. 641 (N.D. Tex. 1978), *vacated on
  other grounds*, 625 F.2d 49 (5th Cir. 1980)..........................................................9

*Destefano v. Zynga, Inc.*,
  No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196
  (N.D. Cal. Feb. 11, 2016)............................................................................ *passim*

1335972_1

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES AND AWARD TO
LEAD PLAINTIFF AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH          - ii -

1

2                                                                                              **Page**

3

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ...........................................................................12

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)..............................................................................6

*Goldstein v. MCI WorldCom*,
  340 F.3d 238 (5th Cir. 2003) ...........................................................................9

*Gottlieb v. Barry*,
  43 F.3d 474 (10th Cir. 1994) ...........................................................................6

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969 (7th Cir. 1991) ...........................................................................6

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ...........................................................................18

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)...........................................................................7

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
  No. 3:09-cv-00419-MMD-WGC, 2012 U.S. Dist. LEXIS 151498
  (D. Nev. Oct. 19, 2012)...........................................................................20

*In re Accuray, Inc., Sec. Litig.*,
  No. 4:09-cv-03362-CW, slip op.
  (N.D. Cal. Dec. 8, 2011) ...........................................................................4

*In re Alstom SA Sec. Litig.*,
  741 F. Supp. 2d 469 (S.D.N.Y. 2010)...........................................................................12

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
  No. 04 Civ. 8141 (DAB), 2010 U.S. Dist. LEXIS 129196
  (S.D.N.Y. Dec. 2, 2010)...........................................................................20, 21

*In re Amgen Sec. Litig.*,
  CV 7-2536 PSG (PLAx), 2016 U.S. Dist. LEXIS 148577
  (C.D. Cal. Oct. 25, 2016) ...........................................................................12

*In re Apple Comput. Sec. Litig.*,
  No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608
  (N.D. Cal. Sept. 6, 1991) ...........................................................................12

28

1335972_1

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES AND AWARD TO
LEAD PLAINTIFF AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH     - iii -

1

2                                                                                              **Page**

3

4    *In re BankAtlantic Bancorp, Sec. Litig.*,
        No. 07-61542-CIV-UNGARO, 2011 U.S. Dist. LEXIS 48057
5        (S.D. Fla. Apr. 25, 2011), *aff'd*, 688 F.3d 713 (11th Cir. 2012)................................12

6    *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*,
        No. 02-ML-1475-DT, 2005 U.S. Dist. LEXIS 13627
7        (C.D. Cal. June 10, 2005) ................................................................16

8    *In re Hi-Crush Partners L.P. Sec. Litig.*,
        No. 12-Civ-8557 (CM), 2014 U.S. Dist. LEXIS 177175
9        (S.D.N.Y. Dec. 19, 2014)................................................................16

10   *In re JDS Uniphase Corp. Sec. Litig.*,
        No. C-02-1486 CW (EDL), 2007 WL 4788556
11       (N.D. Cal. Nov. 27, 2007)................................................................12

12
     *In re King Res. Co. Sec. Litig.*,
13       420 F. Supp. 610 (D. Colo. 1976)................................................................8

14   *In re LDK Solar Sec. Litig.*,
        No. C 07-5182 WHA, 2010 U.S. Dist. LEXIS 87168
15       (N.D. Cal. July 29, 2010) ................................................................20

16   *In re M.D.C. Holdings Sec. Litig.*,
        No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488
17       (S.D. Cal. Aug. 30, 1990) ................................................................13

18
     *In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
19       No. 04 Civ. 8144(CM), 2009 U.S. Dist. LEXIS 120953
        (S.D.N.Y. Dec. 23, 2009)................................................................20
20

21   *In re Mego Fin. Corp. Sec. Litig.*,
        213 F.3d 454 (9th Cir. 2000) ................................................................17

22
     *In re Omnivision Techs.*,
23       559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................7, 17, 20

24   *In re Online DVD-Rental Antitrust Litig.*,
        779 F.3d 934 (9th Cir. 2015) ................................................................17
25

26   *In re Optical Disk Drive Prods. Antitrust Litig.*,
        No. 3:10-md-2143 RS, 2016 U.S. Dist. LEXIS 175515
27       (N.D. Cal. Dec. 19, 2016)................................................................18

28

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES AND AWARD TO
         LEAD PLAINTIFF AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH        - iv -

1

2                                                                                              **Page**

3

4   *In re Oracle Corp. Sec. Litig.*,
       No. C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995
5      (N.D. Cal. June 16, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010)................................11

6   *In re Rite Aid Corp. Sec. Litig.*,
       146 F. Supp. 2d 706 (E.D. Pa. 2001) ................................................................11

7   *In re Rite Aid Corp. Sec. Litig.*,
8      269 F. Supp. 2d 603 (E.D. Pa. 2003), *vacated on
       other grounds*, 396 F.3d 294 (3d Cir. 2005) ........................................................18

9   *In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
10     19 F.3d 1291 (9th Cir. 1994) ................................................................5, 6, 8, 11

11  *In re WorldCom, Inc. Sec. Litig.*,
       No. 02 Civ. 3288 (DLC), 2004 U.S. Dist. LEXIS 22992
12     (S.D.N.Y. Nov. 12, 2014) ................................................................16

13  *In re Xcel Energy, Inc.*,
14     364 F. Supp. 2d 980 (D. Minn. 2005) ................................................................12

15  *Kirchoff v. Flynn*,
       786 F.2d 320 (7th Cir. 1986) ................................................................6
16

17  *Maley v. Del Global Techs. Corp.*,
       186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................11
18

19  *Miller v. Woodmoor Corp.*,
       No. 74-F-988, 1978 U.S. Dist. LEXIS 15234
20     (D. Colo. Sept. 28, 1978) ................................................................9

21  *Missouri v. Jenkins*,
       491 U.S. 274 (1989)................................................................13

22  *Morrison v. Nat'l Austl. Bank Ltd.*,
23     561 U.S. 247 (2010)................................................................12

24  *Paul, Johnson, Alston & Hunt v. Graulty*,
       886 F.2d 268 (9th Cir. 1989) ................................................................4, 5, 6
25

26  *Powers v. Eichen*,
       229 F.3d 1249 (9th Cir. 2000) ................................................................6

27  *Robbins v. Koger Props.*,
28     116 F.3d 1441 (11th Cir. 1997) ................................................................12

Page

*Six (6) Mexican Workers v. Ariz. Citrus Growers,*
    904 F.2d 1301 (9th Cir. 1990) ...................................................................5

*Swedish Hosp. Corp. v. Shalala,*
    1 F.3d 1261 (D.C. Cir. 1993) ....................................................................6

*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993) .....................................................................6

*Trustees v. Greenough,*
    105 U.S. 527 (1882) ..................................................................................5

*Van Wingerden v. Cadiz, Inc.,*
    No. LA CV15-03080 JAK (JEMx), 2017 U.S. Dist. LEXIS 18800
    (C.D. Cal. Feb. 8, 2017)...........................................................................11

*Vincent v. Hughes Air West, Inc.,*
    557 F.2d 759 (9th Cir. 1977) ...................................................................5

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) ........................................................ *passim*

*Wal-Mart Stores, Inc. v. Visa U.S.A.,*
    396 F.3d 96 (2d Cir. 2005).......................................................................18

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(4) ................................................................................1, 2, 4, 20

**SECONDARY AUTHORITIES**

Report of the Third Circuit Task Force, *Court Awarded Attorney Fees,*
    108 F.R.D. 237 (Oct. 8, 1985) ..................................................................6

Stefan Boettrich & Svetlana Starykh, *Recent Trends in
Securities Class Action Litigation*: *2016 Full-Year Review*
(NERA Jan. 2017)....................................................................8, 9, 15, 20

**LEGISLATIVE HISTORY**

H.R. Conf. Rep. No. 104-369, at 32 (1995), reprinted in 1995 U.S.C.C.A.N. 730 ......................16

1335972_1

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES AND AWARD TO
LEAD PLAINTIFF AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH       - vi -

1   TO:      ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD

2          PLEASE TAKE NOTICE that pursuant to an order of this Court dated October 11, 2017, on

3   January 31, 2018, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of

4   the Honorable Phyllis J. Hamilton, Chief District Judge, at the United States District Court for the

5   Northern District of California, Oakland Division, 1301 Clay Street, Oakland, California 94612,

6   Lead Counsel will respectfully move for entry of the [Proposed] Order Awarding Attorneys' Fees

7   and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4).

8          This motion is based on the following Memorandum in support thereof; the Declaration of

9   Douglas R. Britton in Support of (1) Lead Plaintiff's Motion for Final Approval of Class Action

10  Settlement and Approval of Plan of Allocation, and (2) Lead Counsel's Motion for an Award of

11  Attorneys' Fees and Expenses and Award to Lead Plaintiff Pursuant to 15 U.S.C. §78u-4(a)(4)

12  ("Britton Decl."); the Declaration of Douglas R. Britton Filed on Behalf of Robbins Geller Rudman

13  & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins

14  Geller Decl."); the Declaration of Edward E. O'Lone in Support of Motion for Final Approval of

15  Class Action Settlement and Application for an Award of Attorneys' Fees and Expenses and Lead

16  Plaintiff's Expenses Pursuant to 15 U.S.C. §78u-4(a)(4) ("O'Lone Decl."); the Declaration of

17  Carole K. Sylvester Regarding Notice Dissemination, Publication, Requests for Exclusion Received

18  to Date, Interim Claims Processing, and Estimate of Administration Fees and Expenses ("Sylvester

19  Decl."); the Stipulation of Settlement dated as of August 30, 2017 (ECF No. 143) ("Stipulation" or

20  "Settlement")[1]; all other pleadings and matters of record; and such additional evidence or argument

21  as may be presented before or at the hearing.

22                    **MEMORANDUM OF POINTS AND AUTHORITIES**

23  **I.      PRELIMINARY STATEMENT**

24         Lead Counsel Robbins Geller Rudman & Dowd LLP ("Lead Counsel" or "Robbins Geller")

25  has succeeded in recovering $19 million in cash for the benefit of the Class.  This immediate, certain

26  and substantial recovery was achieved through Lead Counsel's skill, work, tenacity and effective

27  ─────────────────────────

28  [1]     Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation.

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES AND AWARD TO
LEAD PLAINTIFF AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH        - 1 -

1  advocacy.   As compensation for its effective efforts in achieving this result, Lead Counsel

2  respectfully applies for an award of attorneys' fees of 25% of the Settlement Amount, plus litigation

3  expenses and charges reasonably and necessarily incurred to prosecute this Litigation in the amount

4  of $346,800.96, plus interest on both amounts at the same rate as that earned on the Settlement Fund.

5  Lead Counsel also seeks an award of $10,960.00 for the time spent by Lead Plaintiff Delaware

6  County Employees Retirement System ("Lead Plaintiff" or "Delaware County"), pursuant to 15

7  U.S.C. §78u-4(a)(4), in representing the Class throughout this Litigation.

8         As detailed in the accompanying Britton Declaration, Lead Counsel tenaciously pursued the

9  claims in this Litigation for over three years after filing the initial complaint in April 2014,

10  committing the extensive resources necessary to prosecute the Litigation to a successful result.  Lead

11  Counsel faced difficult factual and legal questions from the outset, which continued throughout the

12  Litigation.   The considerable hurdles at every step included establishing liability, defeating

13  affirmative defenses, proving loss causation and damages, and demonstrating that a class action was

14  appropriate for litigation purposes.

15         This Litigation was extremely risky and difficult from the outset because it was prosecuted

16  under the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which has

17  made it harder for investors to bring and successfully conclude securities class actions.  Lead

18  Counsel and Lead Plaintiff were mindful of the fact that in this post-PSLRA environment, a greater

19  percentage of cases are being dismissed than ever before, amid defendants' constant attempts to

20  strengthen the PSLRA.  As retired Supreme Court Justice Sandra Day O'Connor recognized: "To be

21  successful, a securities class-action plaintiff must thread the eye of a needle made smaller and

22  smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v.*

23  *Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

24         For instance, Lead Plaintiff had to prove that Defendants' statements about Imperva, Inc.'s

25  ("Imperva" or the "Company")  competitive success were: (i) false and misleading; (ii) material; and

26  (iii) made with the requisite scienter.  With respect to falsity, Defendants strenuously argued that

27  their statements about Imperva's ability to compete against IBM were true and complete when made.

28  As to materiality, Defendants argued, among other things, that even if their statements about

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES AND AWARD TO
LEAD PLAINTIFF AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH          - 2 -

1   Imperva's competitive success were false or misleading, the information was not material to the

2   Company's investors.  And scienter was hotly disputed, as Defendants took the position that certain

3   internal documents reflected that Imperva was beating IBM four out of five times in head-to-head

4   competition.  Even if Lead Plaintiff was able to overcome these liability hurdles, proving loss

5   causation and damages was equally difficult and risky.

6   The results achieved through Lead Counsel's efforts are particularly impressive given that no

7   claims of any kind were ever brought against the Defendants by the U.S. Securities and Exchange

8   Commission ("SEC") or the Department of Justice ("DOJ").  Lead Counsel nevertheless undertook

9   this representation on a contingency basis and advanced hundreds of thousands of dollars in

10   litigation expenses, with no guarantee of success or recovery.

11   Lead Counsel faced these risks by devoting the necessary resources to successfully litigate

12   this action, which was extremely hard-fought and arduous, as evidenced by the 8,411.70 hours that

13   Lead Counsel dedicated to its prosecution.  *See* Ex. B to the Robbins Geller Decl. for a breakdown of

14   the hours by category that Robbins Geller professionals devoted to the Litigation.  Among many

15   other things, Lead Counsel: (i) conducted a thorough investigation; (ii) filed several detailed

16   complaints; (iii) overcame Defendants' motions to dismiss; (iv) successfully challenged Defendants'

17   pleading of the defenses in their Answer and Amended Answer; (v) conducted substantial fact

18   discovery, including serving non-party subpoenas, obtaining and analyzing more than half a million

19   pages of documents, and taking the depositions of two Rule 30(b)(6) depositions (3 witnesses);

20   (vi) engaged and worked with experts on issues such as materiality, loss causation, damages,

21   database security technology, and customer management software; (vii) fully briefed class

22   certification after conducting the related discovery; and (viii) successfully negotiated a very

23   favorable settlement after considerable settlement negotiations with the assistance of the Honorable

24   Layn R. Phillips (Ret.).  *See, e.g.*, Britton Decl., ¶¶4, 14-87.[2]

25

26   [2]   Submitted herewith in support of final approval of the proposed Settlement is the Notice of Motion and Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation and Memorandum of Points and Authorities in Support Thereof ("Settlement Brief").  In

27   addition, the Court is respectfully referred to the Britton Declaration for a more detailed description of the history of the Litigation, the claims asserted, the investigation undertaken, the Settlement

28   negotiation, and the substantial litigation risks undertaken.

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES AND AWARD TO
LEAD PLAINTIFF AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH     - 3 -

1    The result of Lead Counsel's hard work and perseverance is an all cash settlement of

2    $19 million, which as of August 30, 2017, has been earning interest for the benefit of the Class.

3    Lead Counsel was able to achieve this successful result only by being fully prepared to litigate this

4    case through trial and subsequent appeals.

5    It is against this backdrop that the undersigned Lead Counsel – with the express endorsement

6    of Lead Plaintiff [3] – respectfully requests an award of attorneys' fees equal to 25% of the Settlement

7    Amount.  The requested fee is consistent with the Ninth Circuit's 25% "benchmark" fee in similar

8    actions, *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 273 (9th Cir. 1989), numerous trial

9    court decisions in this Circuit (*see infra* at 14), and decisions throughout the United States (*see infra*

10   at 15).  Consistent with these cases, courts in this District have awarded 25% or more of the

11   settlement amount in securities class actions.  *See, e.g.*, *Destefano v. Zynga, Inc.*, No. 12-cv-04007-

12   JSC, 2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016) (awarding 25% of $23 million

13   recovery plus expenses in a securities class action settlement); *In re Accuray, Inc., Sec. Litig.*, No.

14   4:09-cv-03362-CW, slip op. (N.D. Cal. Dec. 8, 2011) (awarding 25% of $13.5 million recovery plus

15   expenses in a securities class action settlement).  The requested fee is particularly fair and reasonable

16   in view of the substantial risks of bringing and pursuing this Litigation, the considerable

17   investigation and litigation efforts, and the results achieved for the Class.  Moreover, the litigation

18   expenses and charges requested are reasonable in amount and were necessarily incurred to

19   successfully prosecute this Litigation.

20   For the reasons set forth herein, as well as in the Settlement Brief and Britton Declaration,

21   Lead Counsel respectfully requests that the Court approve its application for attorneys' fees,

22   litigation expenses and the reimbursement of expenses for Lead Plaintiff pursuant to 15 U.S.C. §78u-

23   4(a)(4).

24

25

26

27

28   [3]    *See* O'Lone Decl., ¶5.

1335972_1

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES AND AWARD TO
LEAD PLAINTIFF AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH          - 4 -

## II.     AWARD OF ATTORNEYS' FEES

### A.     A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

For its efforts in creating a common fund for the benefit of the Class, Lead Counsel seeks a reasonable percentage of the fund recovered as attorneys' fees.  The percentage method of awarding fees has become an accepted, if not the prevailing method for awarding fees in common fund cases in this Circuit and throughout the United States.

It has long been recognized that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  The purpose of this doctrine is to avoid unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").  This rule, known as the "common fund" doctrine, is firmly rooted in American case law.  *See, e.g.*, *Trustees v. Greenough*, 105 U.S. 527 (1882); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885).[4]

The Supreme Court recognized in *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), that under the common fund doctrine, a reasonable fee may be based "on a percentage of the fund bestowed on the class."  While the district court has discretion to award fees in common fund cases based on either the so-called lodestar/multiplier method or the percentage-of-the-fund method (*WPPSS*, 19 F.3d at 1296), the Ninth Circuit has expressly and consistently approved the use of the percentage method in common fund cases.  *Paul, Johnson*, 886 F.2d at 272; *Six (6) Mexican Workers v. Ariz.*

---

[4]     In *Paul, Johnson*, the Ninth Circuit explained the principle underlying percentage fee awards in common fund cases:

> Since the Supreme Court's 1885 decision in [*Central R.R. & Banking Co. v. Pettus*,113 U.S. 116 (1885)], it is well settled that the lawyer who creates a common fund is allowed an ***extra*** reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit.  The amount of such a reward is that which is deemed "reasonable" under the circumstances.

886 F.2d at 271 (emphasis in original).  Citations are omitted throughout unless otherwise indicated.

1335972_1

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES AND AWARD TO
LEAD PLAINTIFF AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH          - 5 -

1    *Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d

2    1370, 1376-77 (9th Cir. 1993); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002).

3    And the supporting authority for the percentage method in other circuits is overwhelming.[5]

4           Since *Paul, Johnson* and its progeny, district courts in the Ninth Circuit have predominantly

5    used the percentage method in awarding fees in common fund representative actions.  The rationale

6    for compensating counsel in common fund cases on a percentage basis is sound.  First, it is

7    consistent with the practice in the private marketplace of contingent fee attorneys being customarily

8    compensated by a percentage of the recovery.  Second, it more closely aligns the lawyers' interest in

9    being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the

10   shortest amount of time.[6]

11          **B.     The Benchmark Percentage Fee of 25% Is Reasonable in This Case**

12          In *Paul, Johnson*, 886 F.2d at 272, the Ninth Circuit established 25% of a common fund as

13   the "benchmark" award for attorneys' fees.  *See also Torrisi*, 8 F.3d at 1376 (reaffirming 25%

14   benchmark); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (same).  The guiding principle

15   in this Circuit is that a fee award be "'reasonable under the circumstances.'"  *WPPSS*, 19 F.3d at

16

17   [5]   Courts in other circuits favor the percentage-of-recovery approach for the award of attorneys' fees in common fund cases.  Indeed, two circuits have mandated use of the percentage method in common fund cases.  *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774-75 (11th Cir. 1991).   And Circuit courts and commentators in four additional circuits have expressly approved the use of the percentage method. *Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (citing footnote 16 of *Blum* recognizing both "implicitly" and "explicitly" that a percentage recovery is reasonable in common fund cases); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 254 (Oct. 8, 1985).

22   [6]   As the court in *Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986), stated:

23               The contingent fee uses private incentives rather than careful monitoring to
24           align the interests of lawyer and client. The lawyer gains only to the extent his client
             gains. . . .  The unscrupulous lawyer paid by the hour may be willing to settle for a
25           lower recovery coupled with a payment for more hours. Contingent fees eliminate
             this incentive and also ensure a reasonable proportion between the recovery and the
26           fees assessed to defendants. . . .

27               At the same time as it automatically aligns interests of lawyer and client,
             rewards exceptional success, and penalizes failure, the contingent fee automatically
28           handles compensation for the uncertainty of litigation.

1296 (emphasis omitted). "The Ninth Circuit has approved a number of factors which may be relevant to the district court's determination: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007). Each factor supports the benchmark fee award that Lead Counsel requests in this case.

### 1.      The Result Achieved

Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Zynga*, 2016 U.S. Dist. LEXIS 17196, at *57-*58 ("The overall result and benefit to the class from the litigation is the most important factor in granting a fee award."); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

Here, a substantial and certain recovery of $19 million in cash has been obtained through the efforts of Lead Counsel in the face of substantial risk and determined opposition and, significantly, without the assistance of any regulatory or governmental agency. The magnitude of this Settlement is, in fact, remarkable considering that Mr. Kramer was dismissed as a §10(b) defendant, numerous statements in the case (including Imperva's quarterly guidance) were dismissed, and Defendants had mounted a vigorous challenge to class certification, seeking to further narrow the case by attempting to rebut the presumption of reliance. Assuming that Lead Counsel was able to prevail at class certification and on every claim asserted, a fairly unlikely result given that the case had been substantially narrowed, the $19 million Settlement represents approximately 8.3% of the Class' maximum estimated damages of $228 million after trial.[7] Britton Decl., ¶110 n.5. And even with a

---

[7]     The total recovery rate would increase to nearly 12% had the Court accepted Defendants' argument opposing Lead Plaintiff's motion for class certification that "the earliest potential date to consider for commencing any class period is November 20, 2013, when the next alleged misstatement was made orally by Mr. Schmid at another investor conference" since "under *Halliburton II*, the win rate statement made on May 21 (as well as those made on December 10,

1    substantially narrowed case, this recovery is significantly higher than the $7.7 million average

2    median settlement value in securities cases over the last three years and more than doubles the

3    average median settlement between 1996 and 2016.  *See* Stefan Boettrich & Svetlana Starykh,

4    *Recent Trends in Securities Class Action Litigation*: *2016 Full-Year Review* at 31, Fig. 26 (NERA

5    Jan. 2017) ("2016 NERA Study").  The $19 million Settlement is a very good result in this case.

6         This factor supports the requested fee award.  Despite challenging obstacles to recovery,

7    Lead Counsel secured a substantial and certain benefit for the Class such that Class Members will

8    receive compensation for their losses in Imperva common stock now, avoiding the expense, delay

9    and uncertainty of continued litigation.

10              **2.      The Risks of the Litigation and the Novelty and Difficulty of
                          the Questions Presented**

11

12        Numerous cases have recognized that risk as well as the novelty and difficulty of the issues

13   presented are important factors in determining a fee award.  *E.g.*, *Vizcaino*, 290 F.3d at 1048 (9th

14   Cir. 2002); *WPPSS*, 19 F.3d at 1299-1301.  Uncertainty that an ultimate recovery would be obtained

15   is highly relevant in determining risk.  *Id.* at 1300.  As the court aptly observed in *In re King Res.*

16   *Co. Sec. Litig.*:

17              The litigation also involved unique and substantial issues of law in the
                technical area of SEC Rule 10b-5, . . . difficult, complex and oft-disputed class action
18              questions, and difficult questions regarding computation of damages. . . .

19                                      *        *        *

20              In evaluating the services rendered in this case, appropriate consideration
                must be given to the risks assumed by plaintiffs' counsel in undertaking the
21              litigation. The prospects of success were by no means certain at the outset, and
                indeed, the chances of success were highly speculative and problematical.

22   420 F. Supp. 610, 632, 636-37 (D. Colo. 1976); *see also Zynga*, 2016 U.S. Dist. LEXIS 17196

23   ("[W]hen counsel takes on a contingency fee case and the litigation is protracted, the risk of non-

24   payment after years of litigation justifies a significant fee award.").

25        Substantial risks and uncertainties in this type of litigation, and in this case in particular,

26   made it far from certain that a recovery, let alone $19 million in cash, would ultimately be obtained.

27   2013 and March 5, 2014) had no price impact, and therefore is not subject to class treatment."  ECF
     No. 109 at 2.
28

1  *See* Britton Decl., ¶¶6, 7, 88-97, 101, 110-120; Settlement Brief at IV.C. at 10-14.  The application

2  of the PSLRA to this Litigation posed significant risks to Lead Plaintiff from the outset, especially

3  with Defendants' motions to dismiss.  In fact, after Congress passed the PSLRA, courts in this

4  Circuit and across the country have increasingly dismissed cases at the pleading stage in response to

5  defendants' arguments that the complaints do not meet the PSLRA's heightened pleading standards.

6  *See* 2016 NERA Study at 25, Fig. 21.  The risk of no recovery (and hence no fee) is high and has

7  increased significantly.  *See Goldstein v. MCI WorldCom*, 340 F.3d 238, 241 (5th Cir. 2003)

8  (affirming dismissal of securities fraud action against defendants Bernard Ebbers and WorldCom

9  even though Ebbers was later convicted criminally).[8]

10     Lead Plaintiff and Lead Counsel faced significant risks on novel and difficult factual and

11  legal questions from the outset.  In fact, the risks posed by the PSLRA materialized in this case.  The

12  Court substantially narrowed the case based on unique factual and legal questions presented by

13  Defendants in two separate motions to dismiss, which amplified the risks as the case moved into

14  discovery and ultimately into summary judgment.  Indeed, the statements that remained in the case

15  following Defendants' motions gave rise to a technical defense on whether Imperva beat IBM "4 out

16  of 5 times" in head-to-head competition.  How a jury (or the Court at summary judgment) would

17  respond to evidence about the size and relative value of the deals and whether a particular deal truly

18  involved head-to-head competition was far from certain and presented a substantial risk that the case

19  would either be dismissed at summary judgment or lost entirely at trial.  And given that Imperva's

20  guidance for 1Q14 was dismissed from the case, there was a significant risk that a jury would side

21  with Defendants on the complicated and important issue of loss causation.  Lead Plaintiff and Lead

22  Counsel were faced with the challenging task of convincing a jury to rule in their favor on loss

23  causation despite this dismissal because the reasons for the miss related to the statements that

24  

---

25  [8]   Even before the passage of the PSLRA, courts had noted that securities litigation "by its very
   nature, is a complex animal."  *Clark v. Lomas & Nettleton Fin. Corp.*, 79 F.R.D. 641, 654 (N.D.

26  Tex. 1978), *vacated on other grounds*, 625 F.2d 49 (5th Cir. 1980); *see also Miller v. Woodmoor
   Corp.,* No. 74-F-988, 1978 U.S. Dist. LEXIS 15234, at *11-*12 (D. Colo. Sept. 28, 1978) ("The

27  benefit to the class must also be viewed in its relationship to the complexity, magnitude, and novelty
   of the case. . . .  Despite years of litigation, the area of securities law has gained little predictability.

28  There are few 'routine' or 'simple' securities actions.").

1  remained in the case.  There was certainly no assurance that a jury would decide these issues in Lead

2  Plaintiff's favor.

3       On top of these risks, Defendants have adamantly denied liability, asserted affirmative

4  defenses to Lead Plaintiff's claims, and challenged class certification.  *See Churchill Vill., L.L.C. v.*

5  *GE*, 361 F.3d 566, 576 (9th Cir. 2004) (upholding the district court's finding of risk based on

6  defendant's belief that it had a strong case on the merits).  Indeed, Defendants' challenge to class

7  certification, which could have either eliminated or further narrowed the case, was pending when the

8  parties settled.  There is no question that absent settlement, Lead Counsel in this case faced the

9  substantial risk of no recovery.  This factor further supports the requested fee.

10      **3.**    **The Skill Required and the Quality and Efficiency of the Work**

11       The "'prosecution and management of a complex national class action requires unique legal

12  skills and abilities.'"  *Zynga*, 2016 U.S. Dist. LEXIS 17196, at *58-*59.  These unique skills were

13  called upon here and support the requested fee.  From the outset, Lead Counsel engaged in a

14  concerted effort to obtain the maximum recovery for the Class.  This case required a determined

15  investigation and the skill to respond to a host of legal and factual defenses raised by Defendants.

16  Lead Counsel demonstrated that, notwithstanding the barriers erected by the PSLRA and

17  Defendants' efforts to limit discovery, it would develop evidence to support a convincing case.

18  Indeed, Lead Counsel's efforts in reviewing, synthesizing and presenting a strong evidentiary-based

19  mediation statement contributed significantly to the result achieved.

20       Lead Counsel is a nationally recognized leader in the fields of securities class actions and

21  complex litigation.  *See* Exhibit H to Robbins Geller Decl.  The recovery obtained for the Class is

22  the direct result of Lead Counsel's expertise and the significant efforts of its highly skilled and

23  specialized attorneys.  *See* www.rgrdlaw.com.  Lead Counsel's reputation of zealously carrying a

24  meritorious case through to the trial and appellate levels, as well as its demonstrable ability to

25  vigorously develop the evidence in this Litigation, enabled it to negotiate the favorable recovery for

26  the benefit of the Class.  Unlike those cases where plaintiffs' counsel were able to "free ride" on the

27  work of others (such as the SEC, DOJ or other governmental agency), here Lead Counsel itself

28  developed the case against Defendants.  Courts have regularly recognized that the efforts of

1   plaintiffs' counsel in achieving a favorable settlement should be accorded greater weight when

2   achieved without the benefit of a governmental investigation.[9]

3          "The quality of opposing counsel is also relevant to the quality and skill that class counsel

4   provided." *Zynga*, 2016 U.S. Dist. LEXIS 17196 at *59.  Here, Lead Counsel was opposed by very

5   skilled and highly respected counsel from Fenwick & West LLP, a law firm with a well-deserved

6   reputation for vigorous advocacy defending complex civil cases.  In the face of this formidable

7   opposition, Lead Counsel was still able to develop its case so as to persuade Defendants to settle for

8   a substantial sum.  This factor supports the requested fee.

### 4.     The Contingent Fee Nature of the Case and the Financial Burden Carried by Lead Counsel

9

10         A determination of a fair fee must include consideration of the contingent nature of the fee

11  and the difficulties that were overcome in obtaining the settlement:

12
13                 It is an established practice in the private legal market to reward attorneys for
                   taking the risk of non-payment by paying them a premium over their normal hourly
14                 rates for winning contingency cases.  *See* Richard Posner, *Economic Analysis of Law*
                   §21.9, at 534-35 (3d ed. 1986).  Contingent fees that may far exceed the market value
15                 of the services if rendered on a non-contingent basis are accepted in the legal
                   profession as a legitimate way of assuring competent representation for plaintiffs
16                 who could not afford to pay on an hourly basis regardless whether they win or lose.

17  *WPPSS*, 19 F.3d at 1299.  Indeed, "[c]ourts 'routinely' enhance multipliers to reflect the risk of non-

18  payment in common fund cases." *Van Wingerden v. Cadiz, Inc.*, No. LA CV15-03080 JAK (JEMx),

19  2017 U.S. Dist. LEXIS 18800, at *35 (C.D. Cal. Feb. 8, 2017) (citing *Vizcaino*, 290 F.3d at 1051).

20         The risk of no recovery for a class and its counsel in complex cases of this type is very real.

21  There are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet

22  received no remuneration whatsoever despite their diligence and expertise.  For example, in *In re*

23  *Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 U.S. Dist. LEXIS 50995 (N.D. Cal. June 16,

---

[9]     *See In re Rite Aid Corp. Sec. Litig.,* 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (in awarding 25%
of a $193 million settlement fund, the court noted the skill and efficiency of plaintiffs' counsel and
outstanding results "in a litigation that was far ahead of public agencies like the [SEC] and the
United States Department of Justice, which long after the institution of this litigation awakened to
the concerns that plaintiffs' counsel first identified"); *Maley v. Del Global Techs. Corp.*, 186 F.
Supp. 2d 358, 371 (S.D.N.Y. 2002) (In awarding 33-1/3% of the settlement fund, the court noted,
"[i]n this Action, Plaintiffs' Class Counsel did not 'piggy back' on any prior governmental
action . . . . Plaintiffs' Class Counsel developed, litigated and successfully negotiated this Action by
themselves, expending substantial time and effort.").

1335972_1

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES AND AWARD TO
LEAD PLAINTIFF AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH       - 11 -

2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010), a case that Lead Counsel prosecuted, the court granted summary judgment to defendants after eight years of litigation, after plaintiff's counsel incurred over $7 million in expenses, and worked over 100,000 hours, representing a lodestar of approximately $40 million.  Additionally, after a lengthy trial involving securities claims against JDS Uniphase Corporation, the jury reached a verdict in defendants' favor.  *See In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007).

Similarly, even the most promising multi-hundred million dollar case can be eviscerated by a sudden change in the law after years of litigation.  *See, e.g.*, *In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471-73 (S.D.N.Y. 2010) (after completing significant foreign discovery, 95% of plaintiffs' damages were eliminated by the Supreme Court's reversal of 40 years of unbroken circuit court precedents in *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010)).  As the court in *Xcel* recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy."  *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005).  Plaintiffs who defeat summary judgment and succeed at trial may even find their judgment overturned on appeal or on a post-trial motion.  "[S]ettlement eliminates the risk that the jury might award less than the amount of the settlement or nothing at all to the class."  *In re Amgen Sec. Litig.*, CV 7-2536 PSG (PLAx), 2016 U.S. Dist. LEXIS 148577, at *7-*8 (C.D. Cal. Oct. 25, 2016).[10]

---

[10]   The risk of a successful verdict being reversed on appeal is not merely academic as a securities class action tried by Robbins Geller attorneys obtained a verdict in favor of the plaintiff class seven years after the case was filed, had judgment entered 11 years after the case was filed, and then had a major portion of the verdict reversed 13 years after the case was filed.  *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015).  The case was finally settled on the day a second trial was scheduled to begin – 14 years after the case was filed – ultimately bringing a successful resolution of the case to class members.  Clearly, prevailing at trial often does not result in an immediate cash payment to the victimized class members: any appeal would create the risk of reversal, in which case the Class would receive nothing after having prevailed at trial.  *See also JDS Uniphase*, 2007 WL 4788556 (after a lengthy trial, jury returned a verdict against plaintiffs and the action was dismissed).  Further, a successful jury verdict does not eliminate the risk to the class.  *See In re Apple Comput. Sec. Litig.*, No. C-84-20148(A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (court entered judgment notwithstanding the verdict for the individual defendants and ordered a new trial with respect to the corporation); *In re BankAtlantic Bancorp, Sec. Litig.*, No. 07-61542-CIV-UNGARO, 2011 U.S. Dist. LEXIS 48057 (S.D. Fla. Apr. 25, 2011) (granting defendants' judgment as a matter of law on the basis of loss causation and overturning jury verdict and award in plaintiff's favor), *aff'd*, 688 F.3d 713 (11th Cir. 2012); *Robbins v. Koger Props.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs against an

Because the fee in this matter was entirely contingent, the only certainties were that there would be no fee without a successful result and that such a result would be realized only after considerable effort.  Nevertheless, Lead Counsel committed significant resources of both time and money to vigorously and successfully prosecute this action for the Class' benefit.  *See* Exhibits A-C to Robbins Geller Decl.  The contingent nature of counsel's representation strongly favors approval of the requested fee.

### 5.    A 25% Fee Award Is Consistent with the Market Rate in Similar Complex, Contingent Litigation

The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for services in the marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989); *see also Vizcaino*, 290 F.3d at 1050 ("[I]n most cases it may be more appropriate to examine lawyers' reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size.").  If this were a non-representative action, the customary fee arrangement would be contingent on a percentage basis and in the range of 30% to 40% of the recovery.  *See Blum*, 465 U.S. at 904 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring); *In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488, at *22 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery.").

As the following list reveals, the requested 25% fee is well within the range of percentage fees awarded within the Ninth Circuit in other comparable securities and antitrust cases:

| Case/Fee Order | Percentage of the Fund | Settlement Amount |
|---|---|---|
| *In re Amazon.Com , Inc. Sec. Litig.*, Master File No. C-01-0358-L (W.D. Wash. Nov. 11, 2005) | 25% | $27.7 million |

accounting firm on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (overturning securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion).

1335972_1

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES AND AWARD TO LEAD PLAINTIFF AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH        - 13

| Case/Fee Order | Percentage of the Fund | Settlement Amount |
|---|---|---|
| *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016) | 25% | $23 million |
| *In re PETCO Corp. Sec. Litig.*, No. 05-CV-0823 H(RBB) (S.D. Cal. Sept. 2, 2008) | 25% | $20.25 million |
| *In re Infonet Services Corp. Sec. Litig.*, Master File No. CV-0 1-1 0456-NM(CWx) (C.D. Cal. July 26, 2004) | 25% | $18 million |
| *In re Alliance Gaming Corp. Sec. Litig.*, No. CV-S-04-0821 -BES-PAL (D. Nev. June 28, 2007) | 25% | $15.5 million |
| *In re Terayon Commc'n Sys., Inc. Sec. Litig.*, No. C-00-1967-MHP (N.D. Cal. Oct. 3, 2007) | 30% | $15 million |
| *In re Dura Pharms., Inc. Sec. Litig.*, No. 99-CV-0151-JLS(WMC) (S.D. Cal. Dec. 4, 2009) | 25% | $14 million |
| *Batwin v. Occam Networks, Inc.*, No. 2:07-cv-02750-CAS(SHx) (C.D. Cal. Feb. 22, 2010) | 25% | $13.945 million |
| *In re Accuray Inc. Sec. Litig.*, No. 4:09-cv-03362-CW (N.D. Cal. Dec. 8, 2011) | 25% | $13.5 million |
| *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Northwest Pipe Co.*, No. 3:09-cv-05724-RBL (W.D. Wash. Mar. 22, 2013) | 25% | $12.5 million |
| *Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech.*, No. 3:09-cv- 00419-MMD-WGC (D. Nev. Oct. 19, 2012) | 25% | $12.5 million |
| *In re Wireless Facilities, Inc. Sec. Litig.*, No. 04cv1589 NLS (S.D. Cal. Jan. 13, 2009) | 25% | $12 million |
| *In re Specialty Laboratories, Inc. Sec. Litig.*, Master File No. CV 02-04352-DDP(RCx) (C.D. Cal. Dec. 28, 2004) | 25% | $12 million |

And a review of the following fee awards in comparable securities cases and other complex class actions from other jurisdictions further confirms the reasonableness of the requested 25% fee award:

| Case/Fee Order | Percentage of the Fund | Settlement Amount |
|---|---|---|
| *Local 731 I.B. of T. Excavators and Pavers Pension Trust Fund v. Swanson*, No. 1:09-cv-00799-MMB (D. Del. June 22, 2012) | 30% | $25 million |
| *Thorpe v. Walter Inv. Mgmt. Corp.*, No. 1:14-cv-20880-UU, 2016 U.S. Dist. LEXIS 144133 (S.D. Fla. Oct. 17, 2016) | 33.3% | $24 million |
| *In re Constar Int'l Sec. Litig.*, No. 03cv05020 (E.D. Pa. Dec. 19, 2012) | 30% | $23.5 million |
| *Beach v. Healthways Inc.*, No. 3:08-cv-00569, slip op. at 1 (M.D. Tenn. Sept. 27, 2010) | 30% | $23.6 million |

| Case/Fee Order | Percentage of the Fund | Settlement Amount |
|---|---|---|
| *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, No. 08 cv-10446 (D. Mass. Dec. 19, 2013) | 25% | $21.2 million |
| *In re Genworth Financial, Inc. Securities Litigation*, Master File No. 1 :14-cv-02392-AKH (S.D.N.Y. Nov. 16, 2017) | 30% | $20 million |
| *In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-cv-12141-AC-DAS, 2015 U.S. Dist. LEXIS 5964, (E.D. Mich. Jan. 20, 2015) | 33-1/3% | $19 million |
| *Dutton v. D&K Healthcare Res., Inc.*, No. 4:04-CV-00147-SNL (E.D. Mo. June 5, 2007) | 25% | $18.7 million |
| *Eshe Fund v. Fifth Third Bancorp*, No. 1:08-cv-421 (S.D. Ohio Nov. 20, 2013) | 33-1/3% | $16 million |
| *Aviva Partners LLC v. Exide Techs.*, No. 3:05-cv-03098-MLC-LHG (D.N.J. June 23, 2009) | 30% | $13.7 million |
| *In re Acclaim Entm't Sec. Litig.*, No. 2:03-CV-1270(JS)(ETB) (E.D.N.Y. Oct. 2, 2007) | 30% | $13.65 million |
| *In re Groupon Sec. Litig.*, No. 12 CV 2450, 2016 U.S. Dist. LEXIS 95881 (N.D. Ill. July 13, 2016) | 30% | $13.5 million |
| *City of Ann Arbor Emps.' Ret. Sys. v. Sonoco Prods. Co., et al.*, No. 4:08-cv-02348-TLW-KDW (D.S.C. Sept. 7, 2012) | 30% | $13 million |

The requested fee is also less than the median fee award for securities cases based on a recent analysis of fee awards conducted by NERA.  Using data from securities class actions from 1996 through 2011, the study found that for settlements between $10 million and $24 million, where this Settlement falls, the median fee award was 30% of the settlement amount.  And for settlements between 2012 and 2016 in the same range of recovery, the median fee award was 27.5%.  *See* 2016 NERA Study at 39, Fig. 32.  This factor supports the requested fee.

### C.    Lead Plaintiff's Approval Supports the Requested Fee

Delaware County was actively involved in prosecuting and settling this Litigation and has approved the requested fee.  *See* O'Lone Decl., ¶¶3-5.  Delaware County is precisely the type of sophisticated and financially interested investors that Congress envisioned serving as a fiduciary for a class when it enacted the PSLRA.  The PSLRA was intended to encourage institutional investors to assume control of securities class actions in order to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of

1335972_1

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES AND AWARD TO
LEAD PLAINTIFF AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH          - 15 -

1  plaintiff's counsel."  H.R. Conf. Rep. No. 104-369, at 32 (1995), reprinted in 1995 U.S.C.C.A.N.

2  730, 731.   Congress believed that institutions would be in the best position to monitor the

3  prosecution and to assess the reasonableness of counsel's fee requests.

4          Since representatives of Delaware County played an active role and closely supervised the

5  work of Lead Counsel in this Litigation (*see* O'Lone Decl., ¶¶6-7), its endorsement of the fee request

6  supports its approval as fair and reasonable.  *See, e.g.*, *In re Hi-Crush Partners L.P. Sec. Litig.*,

7  No. 12-Civ-8557 (CM), 2014 U.S. Dist. LEXIS 177175, at *12-*13 (S.D.N.Y. Dec. 19, 2014)

8  ("[T]he recommendation of Lead Plaintiffs, which are sophisticated institutional investors, also

9  supports the fairness of the Settlement [because a] settlement reached 'under the supervision and

10 with the endorsement of a sophisticated institutional investor . . . is entitled to an even greater

11 presumption of reasonableness.'"); *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2004

12 U.S. Dist. LEXIS 22992, at *73 (S.D.N.Y. Nov. 12, 2014) ("[T]he nation's second largest public

13 pension fund was chosen as Lead Plaintiff [and] . . . has conscientiously supervised the work of Lead

14 Counsel and gives its endorsement to the fee request, which adheres in all particulars to the retainer

15 agreement.   In these circumstances, the requested fee is entitled to a presumption of

16 reasonableness.").

17         **D.      Reaction of the Class Supports Approval of the Attorneys' Fees**
                     **Requested**

18

19         District courts in the Ninth Circuit also consider the reaction of the class when deciding

20 whether to award the requested fee.  *In re Heritage Bond Litig. v. U.S. Trust Co. of Tex., N.A.*, No.

21 02-ML-1475-DT (RCx), 2005 U.S. Dist. LEXIS 13627, at *48 (C.D. Cal. June 10, 2005) ("The

   presence or absence of objections . . . is also a factor in determining the proper fee award.").

22
           To date, over 13,000 copies of the Notice of Pendency and Proposed Settlement of Class
23
   Action ("Notice") and the Proof of Claim and Release form ("Proof of Claim" and, together with the
24
   Notice, the "Notice Package") were mailed to potential Class Members and nominees.  *See* Sylvester
25
   Decl., ¶11.  The Summary Notice was published in *The Wall Street Journal* and transmitted over
26
   *Business Wire* on November 6, 2017.  *Id.*, ¶15.  In addition, the Stipulation, the Notice Package and
27
   Order Preliminarily Approving Settlement and Providing for Notice (ECF No. 147) ("Notice Order")
28

1    were posted to a website dedicated to the Settlement (www.impervasecuritieslitigation.com) (*id.*,

2    ¶14) and Lead Counsel's website (www.rgrdlaw.com).  Class Members were informed in the Notice

3    that Lead Counsel was moving the Court for an award of attorneys' fees of 25% of the Settlement

4    Amount and for expenses in an amount not to exceed $400,000, plus interest thereon.  Sylvester

5    Decl., Ex. A (Notice) at 2, 8.  Class Members were also advised of their right to object to the fee and

6    expense request, and that such objections are required to be filed with the Court no later than

7    January 3, 2018.  As of the date of this memorandum, no Class Members have objected to counsel's

8    fee and expense request or to the Settlement.  The lack of objection is compelling evidence that the

9    requested fees and expenses are reasonable.  *See, e.g.*, *Zynga*, 2016 U.S. Dist. LEXIS 17196, at *47

10   ("By any standard, the lack of objection of the Class Members favors approval of the Settlement.").

11   Moreover, a small number of objections do not stand in the way of approval of a reasonable fee.  *See*

12   *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).[11]

13   **E.    The Requested Fee Is Reasonable Under a Lodestar Cross-Check
         Analysis**

14

15           Although Lead Counsel seeks approval of a fee based on a percentage of the recovery, "[a]s a

16   final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks

17   as a percentage with what their hourly bills would amount to under the lodestar analysis."

18   *Omnivision*, 559 F. Supp. 2d at 1048.  In *Vizcaino*, the Ninth Circuit noted that an analysis of the

19   "lodestar method is merely a cross-check on the reasonableness of a percentage figure, and it is

20   widely recognized that the lodestar method creates incentives for counsel to expend more hours than

21   may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method

22   does not reward early settlement."  290 F.3d at 1050 n.5.  "The lodestar method requires

23   'multiplying the number of hours the prevailing party reasonably expended on the litigation (as

24   supported by adequate documentation) by a reasonable hourly rate for the region and for the

25   experience of the lawyer.'"  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir.

26   2015).

---

27   [11]   If any objections are received, Lead Counsel will address them in a reply brief to be filed on or
     before January 17, 2018, in accordance with the Court's Notice Order.

28

1    Here, Lead Counsel spent 8,411.70 hours of attorney and paraprofessional time prosecuting

2    this action on the Class' behalf.   Robbins Geller Decl., Exs. A-B.   The resulting lodestar is

3    $4,605,164.00, representing a small multiplier for the $4,750,000 requested fee.  *Id.*  Lead Counsel's

4    fee request is certainly reasonable.   In fact, the Ninth Circuit in *Vizcaino* approved a 28% fee that

5    resulted in a 3.65 multiplier.  *Id.* at 1052-54 (finding multipliers ranged as high as 19.6 though most

6    run from 1.0-4.0); *see also Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 123 (2d Cir. 2005)

7    (upholding multiplier of 3.5 as reasonable on appeal); *In re Rite Aid Corp. Sec. Litig.*, 269 F. Supp.

8    2d 603, 611 (E.D. Pa. 2003) (awarding fee equal to a multiplier of 4.07 and recognizing that

9    "'multipliers in this range are fairly common'"), *vacated on other grounds*, 396 F.3d 294 (3d Cir.

10    2005).  The lodestar cross-check supports the requested fee.

11    **III.    LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
           NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED**

12           Lead Counsel also requests $346,800.96 in litigation expenses incurred prosecuting the case.

13    These expenses are categorized in the Robbins Geller Declaration (Exhibit C) submitted to the Court

14    herewith.

15           The appropriate analysis to apply in deciding which expenses are compensable in a common

16    fund case of this type is whether the particular costs are of the type typically billed by attorneys to

17    paying clients in the marketplace.  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may

18    recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be

19    charged to a fee paying client.'").   Therefore, it is proper to pay reasonable expenses even though

20    they are greater than taxable costs.  *Id.*; *see also Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*,

21    8 F.3d 722, 725-26 (10th Cir. 1993) (expenses reimbursable if they would normally be billed to

22    client); *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (expenses recoverable if

23    customary to bill clients for them).  Since the categories of expenses for which counsel seek payment

24    here are the type of expenses routinely charged to hourly clients and were required to prosecute this

25    Litigation, they should be paid out of the common fund.  *See In re Optical Disk Drive Prods.*

26    *Antitrust Litig.*, No. 3:10-md-2143 RS, 2016 U.S. Dist. LEXIS 175515, at *62-*63 (N.D. Cal.

27    Dec. 19, 2016) ("Attorneys who create a common fund for the benefit of a class are entitled to be

28

1  reimbursed for their out-of-pocket expenses incurred in creating the fund so long as the submitted

2  expenses are reasonable, necessary and directly related to the prosecution of the action.").

3      A significant component of Lead Counsel's expenses is the cost of their financial

4  consultants/experts and private investigator.  *See* Robbins Geller Decl., ¶7(e).  In the post-PSLRA

5  era, the use of professional investigators to gather detailed fact-specific information from percipient

6  witnesses in order to plead complaints that will survive motions to dismiss is a necessity.  Lead

7  Counsel engaged the services of L.R. Hodges & Associates, Ltd. ("LRH") to assist in this regard.

8  LRH conducted a substantial amount of work on behalf of the Class.  *Id.*, ¶7(e)(ii).  Lead Counsel

9  also incurred the expense of Tasta Group (dba Caliber Advisors, Inc.) ("Tasta"), an economic

10  consulting firm that specializes in financial and economic issues that typically arise in securities

11  class actions.  *Id.*, ¶7(e)(i).  Tasta's services in this Litigation were necessary and contributed

12  materially to the benefits achieved for the Class, including the submission of expert declarations in

13  support of Lead Plaintiff's motion for class certification.

14      Other expenses include the costs of computerized research.  *Id.*, ¶7(g).  These are the charges

15  for computerized factual and legal research services, including LexisNexis, Westlaw, Logiclink,

16  Thomson Financial, and PACER.  It is standard practice for attorneys to use these services to assist

17  them in researching legal and factual issues.  These services allowed counsel to do online legal

18  research, access Imperva's SEC filings, perform media searches on Imperva, and obtain analysts'

19  reports on Imperva.

20      Lead Counsel was also required to travel in connection with this Litigation and thus incurred

21  the related costs of meals, lodging, and transportation.  This primarily included travel to New York

22  for mediation and to Oakland and surrounding areas for court hearings, depositions, and meetings.

23  Other expenses that were necessarily incurred in prosecuting this Litigation include expenses for

24  photocopying, mediation fees, filing fees, postage and delivery, telephone expenses, and in-house

25  database management charges to manage a database of more than half a million pages of documents

26  produced by Defendants and third parties.

27      As a cross-check on the reasonableness of these expenses, they are less than 2% of the

28  Settlement Amount.  This is certainly reasonable when compared to the 2.7% median that NERA

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES AND AWARD TO
LEAD PLAINTIFF AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH    - 19 -

1    found in its 2016 study for cases that settled between 1996 and 2016 in the $10 million to

2    $24 million range.  *See* 2016 NERA Study at 39, Fig. 32.

3    **IV.    LEAD PLAINTIFF SHOULD BE AWARDED ITS REASONABLE TIME
         AND EXPENSES UNDER 15 U.S.C. §78u-4(a)(4)**

4
              Lead Counsel also seeks approval for an award of $10,960.00 to compensate Delaware

5    County for the time it spent directly relating to its representation of the Class.  The PSLRA

6    specifically provides that an "award of reasonable costs and expenses (including lost wages) directly

7    relating to the representation of the class" may be made to "any representative party serving on

8    behalf of a class." 15 U.S.C. §78u-4(a)(4).  Courts throughout the country routinely approve awards

9    to compensate class representatives for the time and effort spent on behalf of the class.  *See, e.g.,*

10   *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012

11   U.S. Dist. LEXIS 151498, at *15 (D. Nev. Oct. 19, 2012) (awarding lead plaintiff $5,832.85 and

12   named plaintiff $4,050 to reimburse them for time spent "reviewing briefs, participating in

13   depositions, answering discovery responses and consulting with counsel"); *In re LDK Solar Sec.*

14   *Litig.*, No. C 07-5182 WHA, 2010 U.S. Dist. LEXIS 87168, at *9-*10 (N.D. Cal. July 29, 2010)

15   (awarding lead plaintiff $10,000 for time and expenses in representing class); *Atlas v. Accredited*

16   *Home Lenders Holding Co.*, No. 07-CV-00488-HC (CAB), 2009 U.S. Dist. LEXIS 103035, at *17

17   (S.D. Cal. Nov. 4, 2009) (awarding lead plaintiff $5,000); *In re Am. Int'l Grp., Inc. Sec. Litig.*, No.

18   04 Civ. 8141 (DAB), 2010 U.S. Dist. LEXIS 129196, at *19 (S.D.N.Y. Dec. 2, 2010) (granting

19   PSLRA award of $30,000 to institutional lead plaintiffs "to compensate them for the time and effort

20   they devoted on behalf of a class"); *Omnivision*, 559 F. Supp. 2d at 1049 (finding it "appropriate to

21   reimburse Lead Plaintiffs for their reasonable costs and expenses"); and *In re Marsh & McLennan*

22   *Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144(CM), 2009 U.S. Dist. LEXIS 120953, at *6 n.1 (S.D.N.Y.

23   Dec. 23, 2009) (awarding $144,657 to the New Jersey Attorney General's Office and $70,000 to the

24   Ohio Funds, which was requested to "compensate them for their reasonable costs and expenses

25   incurred in managing this litigation and representing the Class").

26            As set forth in the O'Lone Declaration, Delaware County took an active role in prosecuting this

27   Litigation, including communicating with Lead Counsel regarding issues and developments in the

28

1335972_1

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES AND AWARD TO
LEAD PLAINTIFF AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH          - 20 -

1   Litigation, reviewing pleadings, motions and other documents filed in the case, supervising the

2   production of discovery, providing deposition testimony, and consulting with Lead Counsel

3   concerning the settlement negotiations.  O'Lone Decl., ¶¶6-7.  Pursuant to the PSLRA, Delaware

4   County requests $10,960.00 based on the value of its hours expended participating in and managing

5   this Litigation on behalf of the Class.  O'Lone Decl., ¶7 (130 hours).  These are precisely the types of

6   activities that courts have found support awards to class representatives. *See, e.g.*, *Am. Int'l Grp.*, 2010

7   U.S. Dist. LEXIS 129196, at *19 (granting PSLRA award of $30,000 to institutional lead plaintiffs "to

8   compensate them for the time and effort they devoted on behalf of a class").  The Notice sufficiently

9   informed potential Class Members that Lead Plaintiff would seek reimbursement in an amount not to

10  exceed $25,000.  Sylvester Decl., Ex. A (Notice) at 2, 8.  This request by Delaware County is little

11  more than half of the noticed amount and is supported by the O'Lone Declaration, including a

12  description of the hours dedicated to this Litigation.

13          Lead Counsel's request that the Court award Delaware County $10,960.00 for its time

14  devoted to the Litigation should be granted as the request is reasonable and fully supported by the

15  PSLRA.

16  **V.      CONCLUSION**

17          Based on the foregoing and upon the entire record herein, Lead Counsel respectfully requests

18  that the Court award attorneys' fees in the amount of 25% of the Settlement Amount, plus expenses

19  in the amount of $346,800.96, plus interest on both amounts earned at the same rate and for the same

20  period as that earned on the Settlement Fund until paid, and award Lead Plaintiff $10,960.00 for the

21  reimbursement of the time it spent representing the Class.

22  DATED:  December 20, 2017                    Respectfully submitted,

23                                              ROBBINS GELLER RUDMAN
                                                  & DOWD LLP
24                                              THEODORE J. PINTAR
                                                DOUGLAS R. BRITTON
25                                              ASHLEY M. PRICE

26

27                                                     s/ Douglas R. Britton
                                                _____
28                                              DOUGLAS R. BRITTON

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)

Lead Counsel for Plaintiff

1335972_1

NOTICE OF MOT AND MOT FOR AN AWARD OF ATTYS' FEES AND EXPENSES AND AWARD TO
LEAD PLAINTIFF AND MEMO OF PNTS & AUTHS IN SUPPORT THEREOF - 4:14-cv-01680-PJH          - 22 -

1

<u>CERTIFICATE OF SERVICE</u>

2         I hereby certify that on December 20, 2017, I authorized the electronic filing of the foregoing

3   with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

4   the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

5   caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

6   CM/ECF participants indicated on the attached Manual Notice List.

7         I certify under penalty of perjury under the laws of the United States of America that the

8   foregoing is true and correct.  Executed on December 20, 2017.

9                          s/ Douglas R. Britton

10                        DOUGLAS R. BRITTON

11                        ROBBINS GELLER RUDMAN
                              & DOWD LLP

12                        655 West Broadway, Suite 1900
                          San Diego, CA  92101-8498

13                        Telephone:  619/231-1058
                          619/231-7423 (fax)

14                        E-mail:  dougb@rgrdlaw.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Mailing Information for a Case 4:14-cv-01680-PJH Shankar v. Imperva, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michael Albert**
  malbert@rgrdlaw.com

- **Marie Caroline Bafus**
  mbafus@fenwick.com,pnichols@fenwick.com

- **Matthew James Balotta**
  mbalotta@rgrdlaw.com

- **Jennifer Corinne Bretan**
  jbretan@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com

- **Doug Britton**
  dougb@rgrdlaw.com,kathyj@rgrdlaw.com,e_file_sd@rgrdlaw.com,tjohnson@rgrdlaw.com,ldeem@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Andrew J. Brown**
  andrewb@rgrdlaw.com

- **Frank James Johnson**
  frankj@johnsonfistel.com,michaelf@johnsonfistel.com,ceciliar@johnsonfistel.com,paralegal@johnsonfistel.com

- **Dean S. Kristy**
  dkristy@fenwick.com,kayoung@fenwick.com,lkelleybourne@fenwick.com

- **Felix Shih-Young Lee**
  flee@fenwick.com,tmartin@fenwick.com

- **Tricia Lynn McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com,tjohnson@rgrdlaw.com

- **Susan Samuels Muck**
  smuck@fenwick.com,kayoung@fenwick.com,pnichols@fenwick.com,recordsecf@fenwick.com

- **Ivy T Ngo**
  ingo@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Theodore J. Pintar**
  TedP@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Ashley Price**
  aprice@rgrdlaw.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,info@glancylaw.com,bmurray@glancylaw.com

- **Darren Jay Robbins**
  e_file_sd@rgrdlaw.com

- **Scott H. Saham**
  scotts@rgrdlaw.com

- **Shannon E. Turner**
  sturner@fenwick.com

- **David Conrad Walton**
  davew@rgrdlaw.com

- **Shawn A. Williams**

shawnw@rgrdlaw.com,e_file_sd@rgrdlaw.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`